UNITED STATES of America, Appellee,

v.

Dennis Allen WERLINGER, Appellant.

No. 89–5269.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1989.

Decided Feb. 2, 1990.

William Kirschner, Fargo, N.D., for appellant.

Lynn E. Crokks, Fargo, N.D., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and LARSON,* Senior District Judge.

LAY, Chief Judge.

Dennis Werlinger pleaded guilty to one count of bank embezzlement in violation of 18 U.S.C. § 656 (1982). The district court sentenced Werlinger to twenty-seven months imprisonment. Under the Sentencing Guidelines, Werlinger received an offense level of ten because the amount he embezzled was between $500,001 and $1 million. *See* United States Sentencing Guidelines § 2B1.1(b)(1)(K) (1988). In addition, the district court[1] applied a two-level upward adjustment because "more than minimal planning" was involved, § 2B1.1(b)(4), and a two-level downward adjustment based on Werlinger's acceptance of responsibility, § 3E1.1. The district court found, however, that Werlinger's attempts to induce his co-workers to help him conceal the embezzlement from internal bank auditors amounted to obstruction of justice within the meaning of section 3C1.-1.[2] Accordingly, the district court in-

---

* The Honorable EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Rodney K. Webb, United States District Judge for the District of North Dakota.

2. The Sentencing Commission has acknowledged the inconsistency in finding that a defendant has accepted responsibility and at the same time obstructed justice. The commentary to the 1988 version of the Guidelines (which were applicable at the time of Werlinger's sentencing) stated: "An adjustment under [§ 3E1.1] is not

creased the base offense level by two levels. Werlinger argues that in doing so, the district court misapplied section 3C1.1 as a matter of law. We reverse and remand for resentencing.

## FACTS

Werlinger had been employed as a bank teller at the Norwest Bank in Fargo, North Dakota, for approximately ten years. Over the course of his employment, Werlinger embezzled over $600,000.

On the morning of February 9, 1989, Werlinger noticed the bank's internal auditors preparing to conduct a surprise cash audit. Werlinger immediately attempted to conceal his embezzlement from the auditors. He asked a co-worker responsible for counting out his cash drawer to falsely report the amount of cash on hand. He then directed another co-worker to make a false ledger entry. Neither co-worker complied. Later that day the auditors discovered a cash shortfall of approximately $660,-000, clearly implicating Werlinger as the embezzler. The bank, however, did not notify law enforcement authorities until it notified the FBI the next day, February 10. Werlinger admitted the theft when confronted by the FBI, and cooperated with the FBI throughout its investigation.

## DISCUSSION

■ Section 3C1.1 reads as follows:

*Willfully Obstructing or Impeding Proceedings*

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of

the instant offense, increase the offense level from Chapter Two by 2 levels.

The question whether section 3C1.1 applies to Werlinger's conduct calls for an interpretation of the scope of the guideline. It is therefore a question of law which this court may review *de novo*. *See* 18 U.S.C. § 3742(e)(1), (f)(1) (1988); *United States v. Reyes*, 881 F.2d 155, 156 (5th Cir.1989); *United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir.1989). Werlinger argues that section 3C1.1 does not reach conduct that is part of the crime itself and that occurs prior to an investigation by law enforcement authorities. The government argues that the guideline is not expressly limited to conduct occurring during formal criminal investigations, but that it also covers actions taken to avoid detection in the first instance.

As this court recently observed, the Sentencing Commission intended section 3C1.1 to encompass more than the traditional meaning of obstruction of justice.[3] *United States v. Patterson*, 890 F.2d 69, 71 (8th Cir.1989). Section 3C1.1 and its commentary refer to conduct occurring "during the investigation or prosecution of the offense" that is "calculated to mislead or deceive authorities * * *." Such conduct may include concealing or attempting to conceal material evidence, or procuring or attempting to procure another to do so. Guidelines § 3C1.1 application note 1(a), (b). We have therefore held section 3C1.1 applicable to attempts to deceive authorities and obstruct their investigative efforts before imposition of formal criminal charges. *See*

warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial or administration of justice (*see* § 3C.1), regardless of other factors." Guidelines § 3E1.1 application note 4 (1988). In 1989, the Commission amended this commentary to acknowledge that there may be "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." Guidelines § 3E1.1 application note 4 (1989).

The government recognizes this inconsistency, but argues that the error should lie in granting Werlinger a downward adjustment for acceptance of responsibility, not in applying the adjustment for obstruction of justice. Because our decision that the "obstruction" adjustment is not warranted in this case rests on other ratio-

nale, we need not examine the effect of the commentary. We do, however, think this inconsistency lends support to our decision.

**3.** Courts have construed the criminal offense of obstructing justice, 18 U.S.C. § 1503, to apply only to conduct occurring after the commencement of formal judicial proceedings. *See, e.g., Pettibone v. United States*, 148 U.S. 197, 207, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1893); *United States v. Johnson*, 605 F.2d 729, 730 (4th Cir. 1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980); *United States v. Walasek*, 527 F.2d 676, 678 (3d Cir.1975); *Ferina v. United States*, 302 F.2d 95, 102 (8th Cir.), *cert. denied,* 371 U.S. 819, 83 S.Ct. 35, 9 L.Ed.2d 59 (1962).

*Patterson,* 890 F.2d at 71 (giving false name to arresting officers); *United States v. Williams,* 879 F.2d 454, 455–56 (8th Cir. 1989) (threatening a government informant); *see also United States v. Cain,* 881 F.2d 980, 981 (11th Cir.1989) (hiding stolen checks upon postal inspectors' approach) (per curiam); *United States v. Roberson,* 872 F.2d 597, 609 (5th Cir.) (hiding stolen credit card under seat of police car), *cert. denied,* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *United States v. Galvan–Garcia,* 872 F.2d 638 (5th Cir.) (tossing marijuana bags out car window while being chased by officers), *cert. denied,* —— U.S. ——, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989). However, none of these cases, nor any others of which we are aware, have applied section 3C1.1 as broadly as the government urges here.

The government does not contend that "authorities" as used in the commentary to section 3C1.1 refers to persons other than law enforcement officials. The government argues, however, that even though the FBI remained completely unaware of the bank's suspicions of embezzlement until February 10, Werlinger's actions on February 9 were "calculated to deceive or mislead" the FBI.

We find no support for this argument either in the Guidelines or the accompanying commentary. Rather, we are persuaded that the Sentencing Commission fully accounted for Werlinger's conduct in section 2B1.1, which sets the offense levels for embezzlement. The Commission, in our view, did not intend for the obstruction adjustment to apply cumulatively to the same conduct.

The offense of bank embezzlement itself encompasses elements of fraud, deceit, and concealment. *See, e.g., United States v. Dougherty,* 763 F.2d 970, 973 (8th Cir.1985) (approving instruction that 18 U.S.C. § 656 requires "intent to injure or defraud bank or deceive its officers, * * * "); *United States v. Steffen,* 641 F.2d 591, 597 (8th

Cir.) (loans to relatives structured to deceive bank officers), *cert. denied,* 452 U.S. 943, 101 S.Ct. 3091, 69 L.Ed.2d 959 (1981). It is difficult to imagine an embezzler who does not take some affirmative steps to conceal his wrongdoing. Concealment is crucial to the very success of the crime. Not only does section 2B1.1 provide a base level for embezzlement (with adjustments graduated according to the amount involved), but it also expressly authorizes a two-level upward adjustment when "more than minimal planning" is involved. Guidelines § 2B1.1(b)(4). According to the commentary, "more than minimal planning" occurs when "significant affirmative steps are taken to conceal the offense." *Id.* § 1B1.1 application note 1(f).[4]

In this case, the district court applied the "more than minimal planning" adjustment, because Werlinger had made false book entries over a period of several years. In our view, Werlinger's actions on February 9 were further attempts to continue this concealment and to once again avoid detection. Therefore, this conduct is accounted for in section 2B1.1.

We find support for our decision in Supreme Court cases requiring a clear expression of legislative intent to apply sentence enhancement provisions cumulatively. In *Simpson v. United States,* 435 U.S. 6, 12–13, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978), the Court held that a statute imposing an enhanced sentence upon a defendant who uses or carries a firearm while committing a federal felony is not applicable where the statute defining the underlying felony provides an enhanced penalty for the very same conduct. The Court reaffirmed this holding in *Busic v. United States,* 446 U.S. 398, 403–04, 100 S.Ct. 1747, 1751, 64 L.Ed.2d 381 (1980).

These decisions comport with the presumption that Congress does not intend to impose multiple punishments for one offense unless it clearly expresses an intent to do so. *E.g., Whalen v. United States,*

---

**4.** The commentary suggests that "more than minimal planning" in the embezzlement context contemplates more than a single taking using a single false book entry. It would apply, however, to "several instances of taking money, each accompanied by false entries." Guidelines § 1B1.1 application note 1(f).

445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); *Bell v. United States,* 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). These decisions also follow the principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Simpson,* 435 U.S. at 14, 98 S.Ct. at 914 (quoting *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971)). "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958).

These principles guide our analysis in the present case.[5] Nothing in the Guidelines or its commentary clearly indicates the Sentencing Commission intended cumulative punishment. We therefore will not readily construe section 3C1.1 to apply so broadly as to multiply punishment of conduct already punished through the application of other sections of the Guidelines.

In fact, we find direct support for the proposition that the Sentencing Commission intended just the opposite. The Sentencing Commission clearly intended the adjustments under Chapter Three of the Guidelines to take into account circumstances that, for sentencing purposes, aggravate or mitigate the seriousness of the offenses categorized in Chapter Two.[6] Indeed, both the authorizing legislation and the Commission's policy statements indicate that a major purpose of providing individualized, conduct-related adjustments is to ensure different sentences for criminal conduct of different severity. *See* 28

U.S.C. § 991(b)(1)(B) (Supp. II 1984) (a purpose of Commission is to ensure "sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating circumstances not taken into account in the establishment of general sentencing practices"); Guidelines ch. 1, Pt. A policy statement (Congress sought proportionality to ensure different sentences for criminal conduct of different severity). The Commission has recognized that "double-counting" conduct in applying the Guidelines is inconsistent with this goal and has thus sought to avoid it. *See id.* § 3D1.2 application note 5 (combined offense level for "Groups of Closely Related Counts" prevents "double counting" of offense behavior); *id.* 3C1.1 application note 4 (obstruction of justice enhancement not applicable to offenses such as contempt, obstruction of justice, perjury, and bribery of witness). This policy of mutual exclusivity indicates that the Sentencing Commission did not intend for multiple Guidelines sections to be construed so as to impose cumulative punishment for the same conduct. The interpretation of section 3C1.1 urged by the government therefore not only stretches that section's text to extreme limits, but also contravenes the intent of the Commission.

The government's position also contravenes the policy goal of providing certainty and fairness in sentencing. *See* Guidelines ch. 1, pt. A policy statement. It offers no discernible boundaries to guide sentencing judges in determining whether the obstruction adjustment is to be applied. Under the government's urged interpretation, any criminal taking affirmative steps to avoid detection (a bank robber wearing a mask, a

---

**5.** We acknowledge that the cases we have cited in support of these principles involve the interpretation of sentence enhancement statutes requiring independent conviction, *see Simpson,* 435 U.S. at 7–8, 98 S.Ct. at 910; *Busic,* 446 U.S. at 401, 100 S.Ct. at 1750, or the question whether a single offense authorizes cumulative penalties on separate counts, *see Bell,* 349 U.S. at 82, 75 S.Ct. at 621, or the question whether cumulative penalties are authorized for lesser included offenses, *see Whalen,* 445 U.S. at 686, 100 S.Ct. at 1434. Here, of course, we have a conviction on a single count of a single offense, and must

determine the extent to which multiple sections of the Sentencing Guidelines apply. Nevertheless, we find these cases sufficiently analogous to allow their principles to guide us in construing the Guidelines.

**6.** For example, Chapter Three authorizes adjustments based on the vulnerability of the victim, Guidelines § 3A1.1, the defendant's relative role in the offense, *id.* § 3B1.1, and the defendant's acceptance of responsibility for his conduct, *id.* § 3E1.1.

murderer wearing gloves) would arguably qualify for an adjustment under section 3C1.1. Such a possibility, in our view, promises nothing but inconsistency in the application of section 3C1.1, leaving judges to draw lines based solely on instinct. As the Supreme Court stated in *Busic:* "Our task here is to locate one of the boundaries, and the inquiry is not advanced by the assertion that Congress wanted no boundaries." 446 U.S. at 408. Our decision that section 3C1.1 may not be cumulatively applied to conduct accounted for in other sections of the Guidelines offers a boundary we think the Sentencing Commission intended.

CONCLUSION

We hold that the district court erred in applying section 3C1.1 to Werlinger's attempts to solicit his co-workers to help him conceal his embezzlement from the bank's internal auditors. We therefore reverse and remand this case for resentencing consistent with this opinion.