**UNITED STATES of America, Appellee,**

v.

**Armando Jose RIASCOS, Appellant.**

**No. 91–1018SD.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1991.

Decided Sept. 16, 1991.

Ira Loewy, Miami, Fla., argued (David Bierman, on brief), for appellant.

Philip Hogen, Asst. U.S. Atty., Sioux Falls, S.D., argued (Michelle Tapken, Asst. U.S. Atty., on brief), for appellee.

Before ARNOLD, Circuit Judge, RONEY,* Senior Circuit Judge and WOLLMAN, Circuit Judge.

* The Hon. Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

ARNOLD, Circuit Judge.

This is a drug case. Armando Riascos appeals his conviction and sentence for conspiring to distribute five kilograms of cocaine. 18 U.S.C. §§ 841, 846. Riascos says he did not get a fair trial. He gives two reasons. During its deliberations, his jury used transcripts that were not in evidence of tape recordings that were in evidence. And one of his co-conspirators testified that he and Riascos had distributed drugs before. Riascos also finds fault with his sentence. He claims the District Court[1] erred in calculating his sentence by using the five kilograms he promised to deliver instead of the two and one-half grams that were actually delivered. Riascos also claims he was not a leader or organizer of the conspiracy. The District Court found that he was.

None of Riascos's assignments of error has merit. Any error resulting from the jury's use of the transcripts was harmless. Admitting the challenged co-conspirator's testimony was not an abuse of discretion. And we see no error in Riascos's sentence. We therefore affirm.

■ Riascos argues that his jury was improperly swayed by information not in evidence: the transcripts of certain tape recordings. This conspiracy was far-flung. Riascos, a Colombian living in Miami, was to be the source of cocaine bound for South Dakota. Undercover agents and a former co-conspirator working for them taped several conversations where the plan was laid and pursued. Those tapes were admitted into evidence and played for Riascos's jury. The law in our Circuit, *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975) (Webster, J.), allows transcripts of such recordings to be distributed to the jury. The point is to help them follow what are often poor-quality recordings, in which it is difficult to keep track of the various speakers. The transcripts are then collected before the jury begins deliberating. The law also requires that the District Court explain to the jury that the

1. The Hon. Richard H. Battey, United States District Judge for the District of South Dakota.

tapes—not the transcripts—are the evidence, and that the transcripts are only to help them understand the tapes. *McMillan*, 508 F.2d at 105–06. This distinction may be more theoretical than real. It is, however, the rule of our Court, and it governs this case.

The District Court followed *McMillan* to the letter during the trial proper. The problem, Riascos urges, came later, during the jury's deliberations. The jury sent the following note to the District Judge: "May we use the written transcripts of the tapes to find information to listen to on the tapes[?]" Addendum 10. The Court instructed the clerk to assemble the transcripts and deliver them to the jury. Neither counsel was notified. Nor was the cautionary instruction—that the transcripts are not evidence—repeated.

Riascos was recorded on only one of the tapes. He mounted this defense at trial: he could not obtain the cocaine, and he never intended to supply it. He planned instead, he claimed, to steal the South Dakotans' money and deliver nothing. The particulars of the tape recording of Riascos—his tone, inflection, and manner of speaking—were allegedly essential to his deception defense. Faced with the written words, he continues, the subtleties of the conversation were lost to his jury, and his conviction resulted. Riascos makes one other point. He challenges the accuracy of the transcripts. Though he reluctantly allowed their use at trial to guide the jury, he says he was denied the chance to check them carefully, as he would have done had he been told the jury would have them during their deliberations.

We believe any error here is harmless. It is true that Riascos never conceded at trial that the transcripts were completely accurate. Neither in his brief nor at oral argument, however, has he pointed to any specific inaccuracy, material or otherwise. Riascos presses instead that we cannot be sure that there is not an error in the transcriptions. The possibility of error, however, is not enough to justify a reversal. Without specific allegations of error to guide us, we must assume that the tran-

scripts were accurate representations of the tapes. Further, the jury's note belies the claim that the transcripts rather than the tapes moved them to a verdict. Judge Battey's admonition must have been hanging in their minds: they requested the transcripts as maps to the tapes, not as independent sources of information. We presume the jury was as good as its word. Since there is no real dispute about the transcripts' accuracy, and since the jury's note reveals its proper intentions, we see no reversible error here. Compare *United States v. Costa*, 691 F.2d 1358, 1362–63 (11th Cir.1982) (per curiam). The Court certainly should have informed counsel about the jury's note and allowed them to be heard on what would be a proper response. But no prejudice from this error has been shown.

■ Riascos also claims the testimony of John Showalter deprived him of a fair trial. Showalter, a co-conspirator turned government agent, testified about his prior drug dealings with Riascos. These transactions happened long ago, some even in another country, and were arguably not similar to the conspiracy alleged here. Riascos claims that the prejudice of this evidence far outweighed any probative value it might have had. The District Court, he continues, erred in admitting this other-crimes evidence. Fed.R.Evid. 404(b). We disagree. The District Court, admirably aware that this was a nettlesome question, held a hearing in chambers before admitting the challenged testimony. The Court concluded that Riascos's prior dealings with Showalter did not raise a 404(b) question. The prior transactions went, rather, to Showalter's knowledge of where he could get cocaine. This reasoning is correct. The District Court, however, went even further to protect Riascos. During the challenged testimony, the Court instructed the jury about Showalter's evidence this way:

The defendant is on trial for the offense charged in the indictment and the fact that he may have been involved in a marijuana shipment, he is not on trial for that act. But you can consider the facts

under that in the other contacts which this witness had with the defendant to determine whether this witness knows what he is talking about when he is talking about Mr. Riascos' involvement in this case.

T. 222. The testimony was properly admitted. And the District Court's admonition further insulates its decision here.

 Riascos was sentenced to twelve years and seven months in jail. He argues that this sentence is too harsh. The five kilograms of cocaine he promised were never delivered. Only a small sample, two and one-half grams, were handed over. Moreover, Riascos claims he never intended to produce that much cocaine, and that he could not have done so even if he had wanted to. The District Court rejected these contentions, sentencing Riascos on the basis of the five-kilogram goal of the conspiracy. The Court also concluded that Riascos was one of the driving forces in the conspiracy. It increased his sentence accordingly. Riascos disputes both findings.

The Sentencing Guidelines have this to say:

> If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

U.S.S.G. § 2D1.4. Riascos concedes this rule, but points to an exception in the application notes. If the Court finds that the defendant did not intend to produce the amount of drugs agreed upon, and was not reasonably capable of producing that amount, the sentence should not be based on the negotiated amount. U.S.S.G. § 2D1.4, *Application Note* 1. This is where Riascos's defense—he was going to steal the money, not provide five kilos of cocaine—comes in to reduce his sentence.

The District Court was not persuaded, and neither are we. The Court found that Riascos promised to find five kilos on at least two occasions. He had Showalter come to Florida to complete the deal. When Showalter got there, Riascos told him he was still working toward their goal. The District Court's findings of intent and capability are not clearly erroneous, and we will not disturb them. *United States v. Ehret*, 885 F.2d 441, 445 (8th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). Nor does Riascos's other sentencing challenge fare any better. The sentencing ranges with and without the two-point enhancement for being an organizer or leader overlap at the exact point of Riascos's sentence. The District Court explicitly noted that it would sentence Riascos to twelve years and seven months even without the challenged enhancement. Sentencing Transcript 46–47. Even if we were inclined to reverse the enhancement (which we are not), his sentence would not be affected. We therefore decline to remand for resentencing.

Affirmed.