UNITED STATES of America, Appellee,

v.

Yovetta Jayne WILSON, Appellant.

UNITED STATES of America, Appellee,

v.

William L. KELLETT, Appellant.

UNITED STATES of America, Appellee,

v.

James Edward SCHWAB, Appellant.

UNITED STATES of America, Appellee,

v.

James T. WILSON, Appellant.

UNITED STATES of America, Appellee,

v.

Christopher L. KELLETT, Appellant.

UNITED STATES of America, Appellee,

v.

Bernard J. NIXON, Appellant.

UNITED STATES of America, Appellee,

v.

Ruby Ann BOBADILLA a/k/a
Ruby Peterson, Appellant.

UNITED STATES of America, Appellee,

v.

John P. CUEZZE, Appellant.

Nos. 90–2777 to 90–2779, 90–2841,
90–2978, 90–3006, 90–3058 and
91–1019.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1991.

Decided Jan. 29, 1992.

Susan C. Langston, Kansas City, Mo., argued, for appellant Yovetta Wilson.

· Charles E. Atwell, Kansas City, Mo., argued (Madonna L. Reeves, on the brief), for appellant William L. Kellett.

Leonard L. Meyer, Independence, Mo., argued, for appellant James Schwab.

Susan M. Hunt, Kansas City, Mo., argued, for appellant James T. Wilson.

Gerald M. Handley, Kansas City, Mo., argued, for appellant Bernard Nixon.

Michael T. Halloran, Kansas City, Mo., argued, for appellant Ruby Ann Bobadilla.

Christopher Holloran, Kansas City, Mo., argued, for appellant John Cuezze.

Bruce E. Clark, Asst. U.S. Atty., Kansas City, Mo., argued, for appellee U.S.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Eight defendants appeal the sentences they received after pleading guilty to a conspiracy to transport and receive in interstate commerce large quantities of stolen property in violation of 18 U.S.C. §§ 371, 2314, and 2315. Appellants raise a variety of sentencing issues, primarily whether the district court[1] erred in assessing each of them a two-level enhancement for more than minimal planning,[2] whether three of

---

1. The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri.

2. The government argues that, for most appellants, this issue is non-appealable because their actual sentences fell within the guideline ranges with or without this enhancement. Appellants respond that a sentence is appealable even though it is within the overlap of two relevant guideline ranges. We acknowledge that our prior cases discussing this question are inconsistent. *Compare United States v. Riascos,* 944 F.2d 442, 445 (8th Cir.1991), *and United States v.*

*Hoelscher,* 914 F.2d 1527, 1537 (8th Cir.1990), *cert. denied sub. nom. Giuffrida v. United States,* — U.S. ——, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991), *with United States v. Kloor,* No. 91-2312, 1991 WL 270225 (8th Cir. Dec. 20, 1991), *and United States v. Khang,* 904 F.2d 1219, 1225 (8th Cir.1990). Such inconsistencies may only be resolved by the court en banc. We have decided in this case to address appellants' enhancements on the merits because that will make en banc submission unnecessary.

them deserved a two level reduction for a minor role in the conspiracy, and whether one should have been allowed to withdraw his guilty plea. We affirm.

## I.

For more than a year, James Harvey Bradley, Jr. (who is not an appellant), ran a large stolen property ring based in Kansas City, Missouri. Bradley employed professional shoplifters, or "boosters," to steal items such as video games, video and audio cassette tapes, film, cologne, perfume, power tools, and VCRs from stores throughout Kansas, Missouri, Iowa, Nebraska, and Oklahoma. Bradley told the boosters what to steal, equipped them with cars and special clothing to conceal stolen merchandise, made arrangements for bail bonds whenever they were caught, and bought what they stole for a fraction of its market value.[3] The boosters included appellants Christopher Kellett, William Kellett, Bernard Nixon, and James Schwab.

After returning to Kansas City, the boosters left their stolen property at a drop-off point, such as appellant Ruby Bobadilla's house. Bradley picked up the property and took it to his own house, where appellant Yovetta Wilson removed any remaining store tags and put on new price tags from Bradley's retail businesses, Pumpernickel Deli and J B Wholesale, which then sold the stolen merchandise. Appellant James Wilson worked as a salesman at J B Wholesale. The final appellant, John Cuezze, sold stolen property for Bradley at flea markets throughout the Midwest.

In June 1989, after a ten-month investigation, the FBI executed search warrants at various locations and seized approximately $475,000 in stolen property. In December 1989, a federal grand jury indicted appellants and thirteen others on ten counts of racketeering, drug dealing, conspiracy, and dealing in stolen property. In May 1990, acting pursuant to identical[4] plea agreements, appellants pleaded guilty to one count of conspiracy to transport and receive stolen property, and the government dismissed all other charges against them.

Each plea agreement provided that the defendant had conspired to steal approximately $475,000 in property; that the base offense level was therefore 13; that the defendant was entitled to a two level reduction for acceptance of responsibility, producing an adjusted offense level of 11[5] (9 for Yovetta Wilson); that the government would not agree to a specific sentence, argue for a sentence above the guideline range, nor move for a downward departure; that the government reserved the right to present its version of the facts at the sentencing hearing; and that defendant understood that the court was not bound by the offense level set forth in the agreement.

The district court accepted appellants' guilty pleas and requested presentence reports. Those reports addressed an issue not mentioned in the plea agreements, recommending that each appellant receive a two-level enhancement because the conspiracy required more than minimal planning. *See* U.S.S.G. § 2B1.2(b)(4)(B). Despite objections from the government as well as appellants, the district court agreed and assessed the two level enhancements. This brought each appellant to level 13, except for Yovetta Wilson, who rose to level 11, and Bernard Nixon, who rose to level 15 when his attempt to withdraw his guilty plea cost him the acceptance of responsibility reduction. After taking into account each appellant's criminal history category, the district court imposed sentences ranging from 8–41 months.

---

3. All of the boosters were addicted to Demerol or Dilaudid, and Bradley often paid them with these drugs.

4. There was one difference—the government stipulated that Yovetta Wilson was a minor participant, which reduced her bargained offense level to 9.

5. Under recent amendments that have raised the increases in level for various amounts of property stolen, appellants' adjusted offense level would be 13 rather than 11. *See* U.S.S.G. § 2B1.1(b)(1)(L).

On appeal, all appellants contend that they should not have received the two-level adjustment for engaging in more than minimal planning. In addition, James Wilson, Cuezze, and Bobadilla argue that they should have received two-level reductions for being minor participants in the conspiracy; William Kellett contends that the district court should have granted his motion for a downward departure; and Bernard Nixon challenges the denial of his motion to withdraw his guilty plea.

## II.

*More Than Minimal Planning*

Each appellant received a two-level increase for "more than minimal planning" under § 2B1.2(b)(4)(B) of the guidelines:

(b) Specific Offense Characteristics

\* \* \* \* \* \*

(4)(A) If the offense was committed by a person in the business of receiving and selling stolen property, increase by 4 levels; or

(B) If the offense involved more than minimal planning, increase by 2 levels.

The guidelines define "more than minimal planning" in the Commentary to § 1B1.1, which provides in relevant part:

(f) "More than minimal planning" means more planning than is typical for commission of the offense in a simple form....

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

\* \* \* \* \* \*

In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning. However, repeated instances of such thefts on several occasions would constitute more than minimal planning. Similarly, fashioning a special device to conceal the property ... would constitute more than minimal planning.

U.S.S.G. § 1B1.1, comment. (n. 1(f)).

▬ Appellants argue that their more-than-minimal-planning adjustments constitute improper double counting because both the charge of conspiracy and the nine-level increase based upon the value of the stolen property fully reflect the repetitive nature of their crimes. We disagree. For property crimes, Chapter 2B of the guidelines defines the severity of the offense in part by the dollar amount of property stolen. Thus, at the time in question, the base offense level was 13 for a conspiracy to deal in $475,000 worth of stolen property, even if the conspiracy involved only one overt act. However, that base offense level was subject to adjustments reflecting other offense characteristics; the more-than-minimal-planning adjustment increases the punishment for repeated criminal acts, regardless of the amount stolen.

This is not the double counting we condemned in *United States v. Werlinger*, 894 F.2d 1015 (8th Cir.1990). We have frequently upheld imposition of this adjustment for repeated property offenses, in *Werlinger* itself, 894 F.2d at 1017, and in *United States v. Coney*, 949 F.2d 966 (8th Cir.1991); *United States v. Callaway*, 943 F.2d 29, 31 (8th Cir.1991); *United States v. Reyes*, 908 F.2d 281, 289–90 (8th Cir.1990), *cert. denied* — U.S. ——, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991); and *United States v. Hearrin*, 892 F.2d 756, 758–59 (8th Cir. 1990). As these cases and the above-quoted commentary make clear, the repetitive nature of the criminal conduct, by itself, may warrant this adjustment; we reject appellants' contention that it may not be imposed unless the defendant engaged in extensive planning, complex criminal activity, or concealment.

▬ Each appellant also contends that the district court lacked sufficient evidence to impose the adjustment in his or her individual case. We review the district court's finding that each defendant engaged in more than minimal planning only for clear error. *United States ·v. Coney, supra*, 949 F.2d at 968.

■ There can be no doubt that Bradley's stolen property conspiracy required more than minimal overall planning. Appellants argue that they were not the planners. But under the guidelines, for purposes of applying this adjustment, each conspirator is responsible for all acts in furtherance of the conspiracy; the conduct of co-conspirators is excluded only if it "was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake." *See* U.S.S.G. § 1B1.3(a)(1) & comment. (n.1).

Each appellant pleaded guilty to participating in a conspiracy to deal in the $475,-000 of stolen property seized when the search warrants were executed. The presentence reports detailed repeated, knowing criminal acts by each appellant—shoplifting by the four boosters, receiving stolen property by Bobadilla, removing owner markings from stolen property by Yovetta Wilson, and selling stolen property by James Wilson and Cuezze. These conspirators knew their roles in the overall scheme and carried them out repeatedly over the course of the conspiracy. The district court's decision to impose this enhancement on each appellant was not clearly erroneous. *See United States v. Smith*, 897 F.2d 909, 910–911 (7th Cir.1990).

Finally, appellants argue that their more-than-minimal-planning adjustments violated the terms of the plea agreements. This is simply not true. None of the plea agreements mentioned the more-than-minimal-planning issue. At the sentencing hearings, the government objected to the proposed enhancements; thus, the government more than lived up to its part of the plea bargain. Each plea agreement recited that it was not binding on the Court. Therefore, the fact that the district court chose to impose an enhancement not addressed in the plea agreements cannot constitute a breach of those agreements.

*Minor Role*

■ Appellants James Wilson, Cuezze, and Bobadilla contend that the district court erred in denying them two-level re-ductions for being only minor participants in the offense. *See* U.S.S.G. § 3B1.2(b). We also review this issue under the clearly erroneous standard of review. *See United States v. Laird*, 948 F.2d 444, 447 (8th Cir.1991).

Wilson and Cuezze played an important role in the conspiracy—they sold property stolen by the boosters. The district court found that this sales activity "is what made the Bradley operation work" and that each of them sold property for Bradley knowing that at least some of it was stolen. Given this involvement in the conspiracy, we cannot say that the district court committed clear error in denying Wilson and Cuezze a minor participant's reduction.

■ Bobadilla received stolen property from the boosters and stored it at her house for Bradley on at least four to six occasions over a four month period. She argues that she deserves this reduction because, like Yovetta Wilson, she was less culpable than other members of the conspiracy. *See* U.S.S.G. § 3B1.2, comment. (n. 3). The government opposes a reduction because of Bobadilla's long-term relationship with Bradley and her direct dealings with the boosters. Participants in complex conspiracies may have distinct and independently significant roles that do not necessarily reflect substantially less culpability. *See United States v. Ellis*, 890 F.2d 1040, 1041 (8th Cir.1989). On this record, we cannot conclude that the district court's decision to deny Bobadilla a minor participation reduction was clearly erroneous.

*Other Issues*

■ 1. William Kellett contends that the district court erred in refusing to grant his motion for a downward departure. Kellett spent the ten months between his indictment and sentencing in federal custody because, when indicted, he was serving a two-year sentence on state shoplifting charges arising out of the Bradley conspiracy. He received no credit toward his federal sentence for this time served, but did receive credit against his state sentence. Kellett posits that he would have been paroled by the state had he not been in feder-

al custody. Thus, he was forced in effect to serve two sentences consecutively that would otherwise have been served concurrently, justifying a downward departure.

The district court denied a downward departure, concluding that Kellett had received proper credit in his federal sentence for the fact that the state and federal charges arose from the same activity, and that the possibility of state parole was speculation. We may not review a district court's *discretionary* decision to deny a § 5K2.0 downward departure. *See United States v. Martinez*, 951 F.2d 887, 889 (8th Cir.1991); *United States v. Evidente*, 894 F.2d 1000, 1003–04 (8th Cir.1990). Because Kellett's sentence was a correct application of the guidelines, the question whether to depart downward so as to make his separate state and federal sentences concurrent was committed to the district court's unreviewable discretion.

2. Bernard Nixon contends that the district court erred in not permitting him to withdraw his guilty plea prior to sentencing. He argues that the plea agreement presented to the district court did not properly reflect the government's promise made during plea negotiations to move for a downward departure if Nixon cooperated in another investigation; that his first attorney provided ineffective assistance; and that he is innocent of the conspiracy charge because he was a professional shoplifter who sold what he stole to the highest bidder, which was only sometimes the Bradley ring. The district court discredited Nixon's allegation of a side agreement, rejected his claim of ineffective assistance of counsel, and found that he "intelligently, knowingly and understandingly" entered his guilty plea "freely and voluntarily."

Rule 32(d) of the Federal Rules of Criminal Procedure permits withdrawal of a guilty plea before sentencing "upon a showing by the defendant of any fair and just reason." In determining whether a defendant has met that standard, this court looks at:

> (1) whether defendant established a fair and just reason to withdraw his plea; (2) whether defendant asserts his legal innocence of the charge; (3) the length of time between the guilty plea and the motion to withdraw; and (4) if the defendant established a fair and just reason for withdrawal, whether the government would be prejudiced.

*United States v. Boone*, 869 F.2d 1089, 1091–92 (8th Cir.), *cert. denied*, 493 U.S. 822, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989).

■ We review the district court's decision only for clear error. *See United States v. Abdullah*, 947 F.2d 306, 311 (8th Cir.1991). Here, there was none. The district court heard extensive testimony from Nixon and his former counsel and concluded that Nixon's allegations of a side agreement, ineffective assistance, and an unknowing, involuntary plea were unfounded. The record supports these findings. It also reflects that Nixon waited too long before attempting to withdraw his plea, that his belated assertion of innocence is not credible, and that the government would be at least somewhat prejudiced by withdrawal of his guilty plea. In these circumstances, there was no clear error in the district court's refusal to allow Nixon to withdraw his plea.

We have carefully considered the other issues raised by each of the appellants and conclude that they are without merit. Accordingly, the judgments of the district court are affirmed.