**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Dennis ROMANO, Defendant–Appellant.**

**No. 91–1999.**

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1992.

Decided July 16, 1992.

Rehearing and Rehearing En Banc
Denied Nov. 3, 1992.

F. William Soisson (argued & briefed), Office of the U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Thomas V. Wilhelm (argued & briefed), Bloomfield Hills, Mich., for defendant-appellant.

Before: MERRITT, Chief Judge; MARTIN and SILER, Circuit Judges.

MERRITT, Chief Judge.

Defendant Dennis Romano was convicted on twelve counts of conspiracy, Medicaid fraud, Medicaid kickbacks, mail fraud, and unlawful distribution of controlled substances and sentenced to a total of fifteen years imprisonment. On appeal, Romano argues that the evidence is insufficient to support his conviction on each count. In addition, defendant challenges his sentence on two bases. The first is a double counting claim; the defendant claims that the District Court improperly enhanced his sentence for the same conduct under two different provisions of the *Federal Sentencing Guidelines,* § 3B1.1(a) and § 2F1.1(b)(2). Second, the defendant objects that his sentence is excessive because it is much greater than sentences received by most of his co-conspirators. We affirm defendant's conviction, but find that the District Court improperly enhanced defendant's sentence under two separate provisions for the same conduct. Therefore, we vacate the defendant's sentence and remand for resentencing consistent with this opinion.

## I. Facts

Between 1985 and 1988, the defendant Romano and convicted co-conspirator David Stephanie, owned and operated three medical clinics in Detroit. The clinics each operated in substantially the same fashion for the purpose of defrauding the State of Michigan Medicaid Program and Blue Cross Blue Shield of Michigan. Patients visited the clinics to obtain prescription drugs (typically codeine-based medications) either for personal use or to deal on the streets. To obtain the drugs, the patients were required to submit to a number of unnecessary medical tests. The clinics then billed Medicaid and Blue Cross for performing the tests. Romano and Stephanie also received kickbacks from the American Clinical Laboratory, where blood and urine samples were sent for evaluation, and from the pharmacists who filled the prescriptions.

The Defendant hired doctors for the use of their names to prescribe medications and provider numbers to bill Medicaid for tests performed on patients. Although clinic personnel actually administered the tests to the patients, none of the claims for services submitted to the Medicaid program were for the purpose of diagnosing or treating specified illnesses or injuries. Moreover, none of the physicians who submitted claims for services provided those services themselves nor were the services performed under the direct supervision of any licensed physician. In fact, it appears that none of the Medicaid recipients ever saw a licensed physician authorized to bill under the Medicaid program. The doctors employed by the clinics rarely, if ever, saw patients themselves or even went to the clinics. Only one doctor regularly was present at the clinics, and he sat in an office and filled out charts. Therefore, all of the claims submitted by the Romano clinics to Medicaid were fraudulent.

The kickbacks were disguised as rent or sales commissions, but the evidence showed that the payments were actually made for referring business to the clinics and pharmacists from the clinics. In addition, the defendant's wife was put on the payroll of the American Clinical Laboratory although she performed no services there. Thus, these payments constituted unlawful Medicaid kickbacks.

## II. Analysis

### A. Sufficiency of the Evidence

■ Defendant's first assignment of error is that there is insufficient evidence to sustain his conviction on each count. The standard for reviewing a claim of insufficient evidence "is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *United States v. Martin,* 897 F.2d 1368, 1373 (6th Cir.1990). It is a very difficult burden to overcome. In this case the question is not a close one. There is substantial evidence on the record from which the jury could have inferred defendant's guilt.

Numerous witnesses who had been involved in the operation of the clinics or in

the kickbacks testified against Romano at trial. Most of the witnesses had previously pled guilty to related offenses and agreed to cooperate. The witnesses included: David Stephanie; Ronald Mansur and Sharon Romzek, owners of the American Clinical Laboratory; Delores Woods and Auss Johnson, employees of the clinics; William McPhail and John Robertson, doctors employed by the clinics; Carl Scott, Stanley Goldberg, and Douglas Schram, pharmacists who made kickback payments to Romano; and Linda Fisher, a previous owner of one of the clinics who continued to manage the clinic after she sold it to Romano. Witnesses described in detail the various fraudulent schemes perpetuated through the clinics including the receipt of kickback payments and fraudulent billing. Testimony also indicated that Romano knew about and approved of billing Medicaid for the unnecessary testing.

Based on this testimony and other evidence that was produced with regard to the operation of the Romano clinics, the jury could easily conclude that Romano was guilty on each of the twelve counts for which he was convicted. Consequently, we affirm defendant's conviction and turn to the challenges he makes with respect to his sentence.

B. Sentencing

1. Double Counting

■ Defendant first claims that the District Court erred by enhancing defendant's sentence under § 3B1.1(a), the aggravating role provision, for being an organizer and manager of the criminal activity with control over five or more participants, and § 2F1.1(b)(2), the fraud and deceit provision, for engaging in more than minimal planning.[1] Defendant received a four level increase in his base sentence for his aggravating role and a two level increase for the degree of planning involved. Defendant argues that, because minimal planning is necessarily required to be an organizer or leader of a criminal activity involving five or more persons, he should not have received an enhancement under both sections.

The government argues that the defendant incorrectly equates the two provisions and the conduct considered under each. It interprets the provisions for more than minimal planning and being an organizer or leader as separate and distinct provisions requiring distinct facts. The government points to the decision of the Fourth Circuit in *United States v. Curtis*, 934 F.2d 553 (4th Cir.1991), in which the Court found it permissible to increase a defendant's sentence by two levels for more than minimal planning as well as two levels for being an organizer or a manager.

The Court in *Curtis* acknowledged that double counting is impermissible under the Guidelines, but adopted a very narrow view of when that prohibition applies. The Court found that only when the Guidelines explicitly prohibit double counting[2] will it be impermissible to raise a defendant's offense level under one provision when another offense guideline already takes into account the same conduct. In all other cases, the Court concluded, the offense level adjustments for each guideline are cumulative. Thus, it is appropriate to increase the offense level for each enhancement.

We disagree with the narrow view of double counting explained in *Curtis*. We instead adopt the view of the Eighth Circuit which has held that the Commission

---

1. The relevant sections are as follows:
    § 3B1.1. *Aggravating Role*
    Based on the defendant's role in the offense, increase the offense level as follows:
    (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
    § 2F1.1. *Fraud and Deceit*
    (b) Specific Offense Characteristics
    (2) If the offense involved (A) more than minimal planning, or (B) a scheme to de-

fraud more than one victim, increase by 2 levels.

2. The Court noted that "the Application Notes to sections 3A1.1, 3A1.2, and 3A1.3 clearly provide that an offense level increase based on specific conduct is not permitted if the offense guideline already takes into account that same conduct." *United States v. Curtis*, 934 F.2d 553, 556 (4th Cir.1991).

did not intend for the same conduct to be punished cumulatively under separate Guidelines provisions. *United States v. Werlinger*, 894 F.2d 1015, 1017 (8th Cir. 1990).

As Chief Judge Lay discussed in *Werlinger*, imposing a rule against double counting is consistent with Supreme Court decisions that have required a clear expression of legislative intent to apply sentence enhancement provisions cumulatively. *Id.* (citing *Busic v. United States*, 446 U.S. 398, 403–04, 100 S.Ct. 1747, 1751–52, 64 L.Ed.2d 381 (1980); and *Simpson v. United States*, 435 U.S. 6, 12–13, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978)). A rule against double counting is also consistent with the general rule of lenity in criminal cases. As noted in *Werlinger:* " 'This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.' " *Id.* at 1018 (quoting *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)).

Applying these principles to the present case, we find that if certain conduct is used to enhance a defendant's sentence under one enhancement provision, the defendant should not be penalized for that same conduct again under a separate provision whether or not the Guidelines expressly prohibit taking the same conduct into consideration under two separate provisions. As the Court stated in *Werlinger:* "Nothing in the Guidelines or its commentary clearly indicates the Sentencing Commission intended cumulative punishment." We are persuaded that § 3B1.1(a) already takes into account the conduct penalized in § 2F1.1(b)(2) because, by its very nature, being an organizer or leader of more than five persons necessitates more than minimal planning.

Support for this position is found in the Application Notes to § 3B1.1(a). Note 3 states that, "[f]actors the court should consider include ... the degree of participation in planning or organizing the offense." Under the very terms of the Guidelines,

therefore, the District Court is instructed to take into account the planning that went into the offense under § 3B1.1(a). It would violate established principles of lenity and due process to enhance defendant's sentence again for the same conduct under § 2F1.1(b)(2). Accordingly, we find that the District Court erred in increasing defendant's base offense level under both § 3B1.1(a) and § 2F1.1(b)(2) because the District Court should already have taken into account the conduct considered in § 2F1.1(b)(2) when it gave the defendant a four level enhancement under § 3B1.1(a).

**2. Sentence Parity Among Co-conspirators**

Defendant also claims that his sentence was excessive in that his custodial sentence is greater than that imposed on other individuals involved in the related activities. This claim is without merit.

Although the author of this opinion strongly disagrees, this Circuit has ruled that a District Court may not depart downward under the Guidelines for the purpose of harmonizing the sentences received by codefendants. *United States v. Parker*, 912 F.2d 156 (6th Cir.1990). Although the defendant does not frame this argument as a downward departure case, because the District Court calculated the defendant's sentence under the Guidelines, to bring defendant's sentence into conformity with his codefendants would require a downward departure. Consequently, defendant's challenge on this basis must fail.

The Court also finds no merit in defendant's claim that his sentence is excessive when compared to the sentences received by his codefendants. For example, Romano objects that David Stephanie, an individual who invested in the clinics with Romano, was sentenced to less than three years in prison as a result of his participation. Unlike Romano, however, Stephanie entered into a plea bargain in which he agreed to cooperate and to make significant restitution. Stephanie also had comparatively little to do with the day to day operation of the clinics. Another defendant, Linda Fisher, who did actively par-

ticipate in the management of the clinics received a sentence identical to that received by Romano.

Romano began his fraudulent schemes at a time when he was already on probation for similar activities. Evidence indicated that he was the mastermind behind the fraudulent schemes. He arranged for the purchase of the clinics, solicited the kickback arrangements between the laboratories, the pharmacies and himself, and controlled the operations of the clinics. Under these circumstances, the sentences do not seem disparate.

### III. Conclusion

For the foregoing reasons, we AFFIRM the defendant's conviction on all charges. Because we find that the District Court erred in enhancing defendant's sentence under two separate provisions for the same conduct, we VACATE the defendant's sentence and REMAND for resentencing consistent with this opinion.

SILER, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority opinion, except for Part II.B.1., from which I dissent. In that section, the majority opinion holds that the District Court engaged in double counting under the Sentencing Guidelines by enhancing the defendant's sentence pursuant to § 2F1.1(b)(2), the fraud and deceit provision, for engaging in more than minimal planning, when it also enhanced the sentence under § 3B1.1(a), for being an organizer or leader of the criminal activity involving five or more participants. It is correct that in *United States v. Werlinger,* 894 F.2d 1015, 1017 (8th Cir.1990), the court held that where a bank employee was given an enhanced penalty for more than minimal planning under Guidelines § 2B1.1(b)(4), then his sentence should not have been further enhanced for wilfully obstructing or impeding the proceedings under § 3C1.1 for conduct undertaken while committing the crime of embezzlement.

Nevertheless, I would follow the decision in *United States v. Curtis,* 934 F.2d 553

(4th Cir.1991), which distinguished *Werlinger.* That case is much closer factually to the case at bar, although it involved theft under § 2B1.1. However, that section, under subsection (5), provides for an enhancement if the offense involved more than minimal planning, similar to the enhancement under § 2F1.1(b)(2). As the court held in *Curtis:* "The Sentencing Guidelines are explicit when double counting is forbidden." *Id.* at 556. As Application Note 4 to Part B of the Guidelines states: "The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." That language indicates that the Sentencing Commission will specifically state when such characteristics are not to be cumulative.

Moreover, the enhancement under § 2F1.1(b)(2) is one which increases the base offense level for the crime itself, whereas § 3B1.1 provides an aggravating role enhancement because the defendant was the organizer or leader of a criminal activity with several participants. Certainly, Application Note 3 to § 3B1.1 states that the court should consider "the degree of participation in planning or organizing the offense." However, that is not the only factor which the court is to consider, as it also should consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, ... the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* Although § 2F1.1(b)(2) enhances the offense when it involves more than minimal planning, the language in Application Note 3 to § 3B1.1 suggests an enhancement based upon the "degree of participation in planning or organizing the offense." That means that if the crime has its base offense level increased for more than minimal planning it should be enhanced again if the defendant is the one who organized or led the planning of the offense. In addition, as

in *Curtis,* several of the other factors outlined in Application Note 3 were present here. For instance, the defendant apparently recruited most of his workers, received much of the money from the criminal activity and exercised extensive control and authority over the other participants in the fraudulent activity. Therefore, I would AFFIRM the judgment of the district court in all respects.