[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2006
THOMAS K. KAHN
CLERK

No. 05-10797

D. C. Docket No. 03-00031 CR-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL MCGUINNESS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(June 15, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and FAY, Circuit Judges.

PER CURIAM:

Defendant Daniel McGuinness plead guilty to escape and was sentenced to

24 months' imprisonment, 3 years' supervised release, and a $4,000 fine.

Defendant appeals his sentence, arguing that the two-level sentence enhancement

for "obstruction of justice" provided by United States Sentencing Guidelines section 3C1.1 should not be applied where the underlying offense is escape. Defendant also challenges the district court's imposition of a $4,000 fine despite Defendant's alleged inability to pay. We affirm.

## I. Background

In 1981, Defendant was convicted of various federal drug crimes. Soon after his conviction, Defendant escaped from jail; he was apprehended in December 1983. Defendant attempted a second escape in 1990, but was unsuccessful. Based on these offenses, Defendant's tentative release date was July 2003. In April 2003, Defendant was released from the Nevada State Prison in Carson City, Nevada -- where he had been incarcerated as a federal inmate -- and was given a plane ticket to make an unescorted furlough transfer to Tallahassee, Florida, to complete his sentence in a community corrections center. Defendant failed to report as directed.

In June 2004, officers approached Defendant at a restaurant in Bristol, Virginia, based on a tip that he was a federal fugitive. Defendant presented a Tennessee driver's license that identified him as Ted Stocko and claimed he was

2

staying at the Holiday Inn. Police released Defendant after they ran the name Ted Stocko through their database and checked with a U.S. Marshal but found no outstanding warrants. Several hours later, after an investigation revealed that no one named Ted Stocko was staying at the Holiday Inn, police conducted a traffic stop of the vehicle Defendant was supposed to be driving. Sauna Sharma was alone in this vehicle, but Sharma admitted he had been traveling with a man named Daniel McGuinness. Police ran the name Daniel McGuinness through their database and discovered a warrant for his arrest. Sharma identified Defendant's picture and provided police with a key to Defendant's hotel room. Defendant was not in the hotel room when police arrived.

Approximately fifty officers from the FBI, ATF, U.S. Marshal Service, state, county, and local agencies joined in the search that led to Defendant's apprehension a little over 24 hours after his encounter with police at the restaurant. The officers used a tracking dog, helicopter, and the cooperation of two of Defendant's acquaintances to locate Defendant, who was hiding in the woods near his hotel, carrying $12,589 in cash. Three suitcases containing 86 pounds of marijuana were found 75 yards from Defendant. Defendant, without a plea agreement, plead guilty to escape. The district court sentenced Defendant to 24 month's imprisonment, 3 years' supervised release, and a $4,000 fine. On appeal,

3

Defendant argues that the district court erred by (1) including a two-level sentence enhancement for obstruction of justice in the calculation of his guideline sentence range, and (2) imposing a fine that exceeds Defendant's ability to pay.

## II.  Discussion

### A.  Obstruction-of-Justice Sentence Enhancement

We review the district court's factual findings for clear error and the court's application of the sentencing guidelines to the facts de novo.  United States v. Bradford, 277 F.3d 1311, 1312 (11th Cir. 2002).  United States Sentencing Guidelines (U.S.S.G.) section 3C1.1 provides for a two-level sentence enhancement where "the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction."  The guidelines commentary provides a non-exhaustive list of conduct to which this enhancement applies, including this conduct:

> (c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation; . . . [or]

(g) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.

U.S.S.G. § 3C1.1 cmt. n.4. The commentary provides a separate list of conduct which ordinarily does not warrant application of the section 3C1.1 sentence enhancement, including this conduct:

(a) providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;

(b) making false statements, not under oath, to law enforcement officers, unless Application Note 4(g) above [requiring that the false statement significantly obstructed or impeded the official investigation] applies; . . . [and]

(d) avoiding or fleeing from arrest; . . .

U.S.S.G. § 3C1.1 cmt. n.5.

The district court determined that Defendant's provision of false information to the police officers who approached him in the Virginia restaurant was a significant hindrance to the official investigation of Defendant's fugitive status. During the sentencing hearing, defense counsel objected, arguing that Defendant's false statements and identification did not cause a significant hindrance because it only delayed Defendant's capture by 24 hours.

To establish that Defendant's conduct resulted in an actual hindrance, "the government must present evidence of what action it took that it would not have taken had [defendant]'s identity been known" when Defendant gave false information.  United States v. Banks, 347 F.3d 1266, 1271 (11th Cir. 2003).  The government presented evidence that ultimately a police helicopter, a tracking dog, and approximately fifty law enforcement officers were used to find Defendant -- resources that would not have been expended if Defendant had been truthful about his identity when approached in the restaurant.  The district court did not err in concluding that Defendant's false statements to investigating police officers created a significant hindrance.  The section 3C1.1 sentence enhancement is applicable to Defendant's offense under the express terms of application note 4(g).[1]

Defendant argues that, even if his conduct did create a significant hindrance, courts should not apply the U.S.S.G. section 3C1.1 obstruction-of-justice sentence enhancement when the underlying offense is escape.  He contends the use of

---

[1]The district court concluded that application notes 4(g) and 5(a) applied.  The government argued that notes 4(g) and 4(c) -- not note 5(a) -- should apply because Defendant's production of a false identification document did not occur at arrest, but rather 24 hours before arrest.  Note 4(c), unlike notes 5(a) and 4(g), does not require a showing of significant hindrance.  Because we agree with the district court that Defendant's obstructive conduct significantly hindered the official investigation into his fugitive status, we need not decide whether the use of false identification documents 24 hours before arrest would support a section 3C1.1 enhancement without a showing of significant hindrance.

obstructive conduct to elude capture is inherent in the continuing offense of escape.[2] In United States v. Bradford, 277 F.3d at 1312, we applied a section 3C1.1 obstruction enhancement to the offense of escape where the defendant attempted to threaten a government witness while awaiting trial.[3] Because the obstructive conduct in Bradford occurred after the defendant was captured, that case is not dispositive of whether the section 3C1.1 enhancement should be triggered by obstructive conduct that occurred while the escape was ongoing.[4]

The guidelines commentary specifically lists offenses to which the section 3C1.1 enhancement should not be applied unless "a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction

---

[2]See United States v. Bailey, 100 S.Ct. 624, 636 (1980) (holding that escape from federal custody is a continuing offense).

[3]See also United States v. King, 338 F.3d 794, 799-800 (7th Cir. 2003) (applying obstruction enhancement where defendant committed perjury during trial on escape charges).

[4]Defendant argues that escape is analogous to embezzlement. Defendant relies on United States v. Werlinger, 894 F.2d 1015 (8th Cir. 1990), which said that the obstruction-of-justice sentence enhancement could not be applied to embezzlement. The Werlinger decision was based in part on the existence of an embezzlement-specific guideline that provided for a two-level sentence enhancement where "significant affirmative steps [were] taken to conceal the offense;" the Werlinger court expressed concerned about applying multiple sentence enhancements to the same conduct absent a clear directive from Congress. Id. at 1017. This concern is inapplicable to escape, because escape does not have an offense-specific obstruction enhancement comparable to that in existence for embezzlement when Werlinger was decided. We further note that -- contrary to Defendant's assertions -- this Court did not use reasoning similar to that of Werlinger in United States v. Kirkland, 985 F.2d 535 (11th Cir. 1993). In Kirkland, our decision to reverse the district court's application of the obstruction enhancement to an embezzlement sentence was based solely on our determination that an internal audit is no "official investigation" within the meaning of U.S.S.G. section 3C1.1. Id. at 538.

offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense)." U.S.S.G. § 3C1.1 cmt. n.7. Escape is not one of these listed offenses.[5] And in contrast to two other lists in the commentary to § 3C1.1, this list of offenses that require a special showing for the obstruction enhancement to apply does not indicate it is non-exhaustive. Compare U.S.S.G. § 3C1.1 cmt. n.4, 5, & 7. Because the commentary to section 3C1.1 contains an exclusive list of offenses that the Sentencing Commission chose to exempt from the obstruction-of-justice enhancement absent a special showing, we consider it highly unlikely that the Commission intended -- but failed to mention -- that other offenses were entirely exempt from the enhancement.

In addition, escape -- unlike the offenses for which the commentary specified special treatment -- can be committed and continued without engaging in conduct expressly covered by U.S.S.G. section 3C1.1.[6] The commentary says that "avoiding and fleeing arrest" will ordinarily not justify an obstruction enhancement. See U.S.S.G. § 3C1.1 cmt. n.5(d). A defendant could therefore

---

[5]The offenses listed in application note 7 of the commentary are contempt, obstruction of justice, perjury or subornation of perjury, bribery of witness, failure to appear by material witness, failure to appear by defendant, payment to witness, accessory after the fact, and misprision of felony.

[6] "[E]scaping or attempting to escape from custody before trial or sentencing" ordinarily qualifies for an obstruction-of-justice enhancement, but the commentary is silent about escape after sentencing. See U.S.S.G. § 3C1.1. cmt. n.4(e) (emphasis added).

avoid application of the obstruction enhancement if he attempted to evade arrest and to continue his escape solely by staying out of public places and walking or running away at the sight of police. The use of false identification and statements is not required to commit escape. But such use makes it more difficult for law enforcement to locate an escapee than if the escapee is just running.[7] We therefore reject the argument that the offense of escape is exempt from application of the obstruction-of-justice sentence enhancement; the obstructive conduct penalized by the enhancement is not inherent in the offense.

U.S.S.G. section 3C1.1 and its commentary provide for a two-level obstruction-of-justice sentence enhancement where a defendant has made false statements during an official investigation that significantly hindered the investigation. The district court correctly applied the section 3C1.1 sentence enhancement under the facts and circumstances of this case.

---

[7] Defendant argues that providing false statements and identification during an escape are methods of "avoiding or fleeing from arrest." But the Sentencing Commission did not intend for "avoiding or fleeing arrest" to include providing false identification and statements to law enforcement officers or else the Commission would not have separately addressed this conduct in application notes 5(a) and (b).

## B. Fine

The district court imposed a $4,000 fine out of a guideline range of $2,000 to $20,000. Defendant argues that the district court erred by imposing this fine despite his alleged inability to pay. We review the district court's decision that Defendant is able to pay the fine for clear error. United States v. Singh, 335 F.3d 1321, 1323 n.1 (11th Cir. 2003). "The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine" "even with the use of a reasonable installment schedule." U.S.S.G. § 5E1.2(a) & (e)(1). Defendant has the burden of proving inability to pay. United States v. Hernandez, 160 F.3d 661, 665 (11th Cir. 1998).

At the time of sentencing, Defendant was 59 years old, was in good health, and had no dependants. Defendant had a General Equivalency Diploma ("GED"), but had been incarcerated from 1983 to 2003 and had no known employment history other than drug smuggling. Defendant was adjudged indigent and appointed counsel for trial and appeal.[8] Defendant had $140,000 in liabilities from

---

[8]The guidelines commentary indicates that "the fact that a defendant is represented by (or was determined eligible for) assigned counsel [is a] significant indicator[] of present inability to pay any fine. In conjunction with other factors, [it] may also indicate that the defendant is not likely to become able to pay any fine." U.S.S.G. § 5E1.2 cmt. n.3.

a fine imposed for his 1981 conviction. His only known asset was a claim to $12,500 cash he was carrying at the time of his arrest. This cash was seized by the U.S. Marshals for suspected connection to a drug crime, but Defendant claimed he had hidden the cash before his initial prison term.

The district court concluded that a $4,000 fine was appropriate, because Defendant "either had money hidden away years ago, or he's involved in the drug trade generating additional money." "Evidence that a defendant has failed to disclose the existence of assets to the court, may support a determination that the defendant is able to pay a fine with those undisclosed assets." United States v. Rowland, 906 F.2d 621, 624 (11th Cir. 1990); U.S.S.G. § 5E1.2 cmt. n.6. In the light of the Defendant's own claim that he had hidden assets before starting to serve a prison sentence, the district court did not clearly err by concluding that Defendant failed to establish present and future inability to pay and by imposing a fine at the low end of the guidelines range.[9]

The judgment of the district court is AFFIRMED.

---

[9]The cases cited by Defendant are distinguishable. In Rowland, we concluded that a $50,000 fine was inappropriate because Defendant had a child to support, nothing evidenced hidden assets, and Defendant only had $8,000 in assets other than the $35,000 seized from his possession when he was arrested. See 906 F.2d at 624. In United States v. Paskett, 950 F.2d 705, 709 (11th Cir. 1992), we vacated and remanded a $100,000 fine because the district court had not discussed what factors justified the fine and the record did not contain sufficient information to allow review of the district court's decision.