21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Peter John CATES (93-5714); Paul William Cates (93-5756);
and Sylvia Buller (93-5767), Defendants-Appellants.
 Nos. 93-5714, 93-5756, 93-5767.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1994.
 
 Before: MERRITT, Chief Circuit Judge; and GUY, Circuit Judge; and ALDRICH, District Judge.*
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 Defendant Paul William Cates pled guilty to one count of conspiracy to submit false claims against the United States and to commit mail fraud, in violation of 18 U.S.C. Secs. 287 and 1341. He also pled guilty to four counts of filing false claims against the United States, in violation of 18 U.S.C. Sec. 287. Defendants Peter John Cates and Sylvia Buller were both convicted by a jury under the same count of conspiracy.
 
 
 2
 On appeal, Paul Cates raises three arguments in challenging his sentence: (1) the district court erred in enhancing his sentence two points pursuant to Sec. 2F1.1(b) of the sentencing guidelines based on its finding that there was more than one victim and that his fraudulent scheme involved him misrepresenting himself as acting on behalf of a religious organization; (2) the district court erred in enhancing his sentence four points under Sec. 3B1.1(a) of the sentencing guidelines for his aggravating role because there is no evidence that there were five or more individuals involved in the offense, and it is also impermissible double counting of the same offense conduct to enhance his sentence under Sec. 2F1.1(b) and Sec. 3B1.1(a) of the sentencing guidelines; and (3) the district court erred in denying his request for a reduction of his offense level pursuant to Sec. 3E1.1 of the sentencing guidelines, based on his acceptance of responsibility.
 
 
 3
 Peter Cates and Sylvia Buller both challenge on appeal the district court's instructions to the jury on conspiracy, claiming the jury was not adequately instructed on their theories of defense. They both further argue that the evidence is insufficient to convict either of them of conspiracy. Finally, Peter Cates contends that the district court abused its discretion in refusing to reduce his offense level pursuant to Sec. 3B1.2 of the sentencing guidelines for his minimal or minor role in the conspiracy.
 
 
 4
 We have reviewed the record and can find no merit to any of the arguments defendants raise on appeal; therefore, we affirm.
 
 I.
 
 5
 In 1976, Paul Cates incorporated an organization known as Faith Evangelistic Association (FEA). In 1983, he formed another corporation, Evangelistic and Faith Enterprises of America, Inc. (EFEA). Through these two corporations, for a period stretching at least six years, Cates filed false claims for medical services with Civilian Health and Medical Program for the Uniform Services (CHAMPUS) and various private medical insurance carriers. Part of Cates's fraudulent conduct included misrepresenting himself as a medical doctor and/or the holder of a Ph.D. in psychology. Paul Cates's activities can be summarized.
 
 
 6
 At several Christian schools, he set up Talent Development Programs, which tested children for learning disorders and disabilities. These programs also offered educational classes for special needs children. He told the parents of these children that CHAMPUS and some private insurance companies would reimburse them for the cost of these tests and the tuition charged for the classes.
 
 
 7
 Cates knew, however, that neither CHAMPUS nor private insurance companies would pay any costs stemming from the Talent Development Programs. Therefore, he concocted a scheme whereby these costs were recouped through the submittal of fraudulent insurance claims. These claims listed fictitious office visits as the expense for which reimbursement was sought. To calculate the number of office visits that each child should claim, the cost of that child's classes was divided by the expected reimbursement per fictitious office visit. Once this number was determined, random dates were chosen to be the days on which these visits were supposed to have occurred. The claim forms also falsely stated that Paul Cates was an M.D. and/or Ph.D., and that the child's physician had referred the child to the Talent Development Program for testing and/or treatment.
 
 
 8
 Both CHAMPUS and private insurers paid the claims. According to testimony at trial, in addition to the false statements on the forms, another reason why the insurance companies did not discover any irregularities was that the forms usually contained a provider number or included a provider application. A provider number indicates one is "authorized" to provide services, and Cates was able to obtain these numbers under false pretenses. For instance, the main requirement to get a CHAMPUS provider number is state licensure. Cates satisfied this requirement when, based on fraudulent means, he obtained a membership in the American Psychological Association. Because insurance companies do not make routine checks into the truthfulness of the representations made in applications for provider status, this deceit went undetected.
 
 
 9
 The jury found the two other defendants, Buller and Peter Cates, were involved in this scheme. At each school there was normally one employee who, at Paul Cates's direction, was responsible for completing the insurance forms. Buller performed these duties for the Warner-Robins Christian Academy beginning in the fall of 1985. The extent of her work will be discussed when the issues she has raised are addressed. Peter, Paul's son, worked for FEA/EFEA from 1982 through July 1984, when he entered military service. When he returned in 1988, he resumed working at EFEA. As with Buller, his involvement will be more fully explored later in this opinion.
 
 
 10
 The unraveling of Paul Cates's scheme occurred in 1990. Linda Starnes, the employee responsible for completing the claims at Wise County Christian School, questioned the propriety of submitting fraudulent forms. When she approached Paul Cates with her concerns, he instructed her that this was the manner in which the insurance companies had requested the forms be submitted. When she brought her apprehensions to her supervisor's attention, Wayne Freeman, she was told that she asked too many questions. Freeman later left Wise School, and Starnes expressed these same concerns to the school's principal. As a result of that discussion, a call was placed to an insurance carrier, which led to a joint investigation by the United States Department of Defense and the United States Postal Service.
 
 
 11
 The investigation culminated in an indictment charging Paul and Peter Cates, Sylvia Buller, and others with conspiracy to submit false claims against the United States and to commit mail fraud. Paul was also named in eighty-two other counts alleging false claims, mail fraud, and money laundering violations. A criminal forfeiture count was included against Paul Cates and others.
 
 
 12
 On November 2, 1992, Paul Cates pled guilty to the conspiracy count and to a four-count information alleging false claims against the United States. Following an eight-day jury trial, both Peter Cates and Sylvia Buller were convicted on the conspiracy count. Paul Cates was sentenced to twenty-four months in custody on all counts, to be served concurrently; Peter Cates was sentenced to one month in custody and five months of supervised release on home detention; and Buller was sentenced to three years of probation with a condition of serving six months in home detention.
 
 II.
 A.
 
 13
 Paul Cates first challenges the enhancement of his sentence level.[1] Application of a guidelines provision to a particular set of facts is a question of law reviewed de novo. United States v. Wilson, 920 F.2d 1290, 1294 (6th Cir.1990), cert. denied, 113 S.Ct. 2365 (1993). Findings of fact underlying a sentence determination, however, are reviewed for clear error. United States v. Eve, 984 F.2d 701, 703 (6th Cir.1993). The district court's factual findings regarding a defendant's role in the offense are reversed only if clearly erroneous, and the district court is "not required to cite specific facts to support its findings regarding defendants' roles in the conspiracy[.]" United States v. Okayfor, 996 F.2d 116, 122 (6th Cir.), cert. denied, 114 S.Ct. 238 (1993).
 
 
 14
 The district court enhanced the offense characteristics by two points under Sec. 2F1.1(b), which provides:
 
 
 15
 (2) If the offense involved (A) more than minimal planning; (B) a scheme to defraud more than one victim; [or] (C) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency....
 
 
 16
 In discussing the enhancement of Paul Cates's sentence, the court stated "that in this case we do have more than one victim and we do have [Paul] acting on behalf of a religious organization." (App. 611.)
 
 
 17
 Cates contends this enhancement was improper because the district court's determination that he was acting on behalf of a religious organization was clearly erroneous. Even if this assertion were true, it would not affect his sentence. Section 2F1.1(b)(2) permits a two-level increase if the defendant was acting on behalf of a religious organization or if there was more than one victim. The district court explicitly stated there was more than one victim, and Cates has not challenged this finding. Accordingly, we hold the two-level sentence enhancement under Sec. 2F1.1(b) was appropriate.
 
 B.
 
 18
 Paul Cates next argues that his sentence cannot be enhanced two levels under Sec. 2F1.1(b) and four levels under Sec. 3B1.1(a). Section 3B1.1(a) provides:
 
 Aggravating Role
 
 19
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 20
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 21
 Relying on United States v. Romano, 970 F.2d 164 (6th Cir.1992), Cates argues that to enhance his sentence under both provisions is to impermissibly punish him for the same conduct.
 
 
 22
 In Romano, the court stated that "if certain conduct is used to enhance a defendant's sentence under one enhancement provision, the defendant should not be penalized for the same conduct again under a separate provision[.]" Id. at 167. The court found improper sentence enhancements for the defendant's role in the offense as an organizer or leader under Sec. 3B1.1(a) and more than minimal planning under Sec. 2F1.1(b)(2), because more than minimal planning, the conduct that is taken into account under Sec. 2F1.1(b)(2), also is required to qualify as an organizer under Sec. 3B1.1(a). "The rationale behind Romano is that a defendant should not be penalized for the same conduct under two different guideline provisions." United States v. Chichy, 1 F.3d 1501, 1506 (6th Cir.), cert. denied, 114 S.Ct. 620 (1993).
 
 
 23
 The case before us is distinguishable from Romano. Here, the sentence was enhanced because there was more than one victim and because Cates was an organizer or leader. We do not see how the defrauding of multiple victims involves the same conduct as that of being an organizer or leader. See United States v. Aideyan, 11 F.3d 74 (6th Cir.1993). Thus we find defendant's reliance on Romano to be misplaced.
 
 
 24
 Cates also argues that his sentence cannot be enhanced under Sec. 3B1.1(a) because there is no evidence that there were five or more participants or that the criminal activity was otherwise extensive. We disagree. The conspiracy extended from at least January 1, 1984, through November 3, 1990. It involved multiple false representations to parents, schools, insurance companies and to CHAMPUS, as well as multiple false claims to various private insurers and CHAMPUS. In order to carry out this scheme, Paul Cates relied on the help of many other individuals, some knew of their involvement (Peter Cates and Buller), and others, including Isobel Morrow Cates, Kirk Douglas Cates and Marion Wayne Freeman, who were more or less duped. U.S.S.G. Sec. 3B1.1, comment. (n.2) states: "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." Keeping this principle in mind, and based on the facts before us, we cannot say that Paul Cates's activities were not otherwise extensive.
 
 C.
 
 25
 Paul Cates contends that the district court erred in denying his request for a reduction of his offense level under Sec. 3E1.1. Section 3E1.1 provides:
 
 Acceptance of Responsibility
 
 26
 (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
 
 
 27
 The trial judge is in the best position to evaluate a defendant's attempt to accept responsibility. The sentencing judge's determination is thus entitled to great deference on review, and should be sustained unless it is clearly without foundation. United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1989); United States v. Thomas, 870 F.2d 174, 176 (5th Cir.1989).
 
 
 28
 The district court stated that it had "listened carefully to [Paul Cates's] testimony in the two days that he was before the court testifying for the sentencing hearing. I don't think that [Paul Cates] ever admitted responsibility." (App.611.) The record supports this finding. For instance, when asked whether he knew that a Spanish language certificate of appreciation was not an M.D. degree in pediatric neurology, he replied "I still do not know." (App. 549.) Cates also continued to maintain that he had received a Ministerial Degree (M.D.) from a school that had no record of him, and that he had done work in psychology at a non-existent hospital. Based on statements such as these and many others, we cannot say that the district court erred in refusing to grant Paul Cates a sentence reduction under Sec. 3E1.1.
 
 D.
 
 29
 Both Peter Cates and Sylvia Buller challenge the court's instructions to the jury on conspiracy. Jury instructions are reviewed "as a whole to determine whether they fairly and adequately submitted the issues and the applicable law to the jury." United States v. Williams, 952 F.2d 1504, 1512 (6th Cir.1991).
 
 The court instructed the jury as follows:
 
 30
 A conspiracy is a kind of a criminal partnership. For you to find either of the defendants guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt.
 
 
 31
 First, that two or more persons conspired, or agreed, to commit the crimes of submission of false claims against the United States or mail fraud. Second, that the defendant knowingly and voluntarily joined the conspiracy.
 
 
 32
 ....
 
 
 33
 You must be convinced that the government has proved all of these elements beyond a reasonable doubt in order to find either or both of these defendants guilty of the conspiracy charge.
 
 
 34
 ....
 
 
 35
 Ladies and gentlemen, if you are convinced that there was a criminal agreement, then you must decide whether the government has proved that the defendants knowingly and voluntarily joined that agreement. You must consider each defendant separately in this regard.
 
 
 36
 To convict either defendant, the government must prove that the defendant knew the conspiracy's main purpose, and that the defendant voluntarily joined the conspiracy intending to help advance or achieve its goals.
 
 
 37
 ....
 
 
 38
 [J]ust because a defendant may have done something that happened to help a conspiracy does not necessarily make the defendant a conspirator.
 
 
 39
 ....
 
 
 40
 What the government must prove is that a defendant knew the conspiracy's main purpose and that the defendant voluntarily joined it intending to help advance or achieve its goals. This, ladies and gentlemen, is essential.
 
 
 41
 ....
 
 
 42
 Ladies and gentlemen, the government is not required to prove that each defendant was a mastermind of the scheme to defraud. Proof of a defendant's willful participation in a scheme with knowledge of its fraudulent elements is sufficient. Nor is a person exonerated by the fact that he or she may have participated in the scheme to a lesser extent than others.
 
 
 43
 Next, I want to explain something about proving a defendant's knowledge. No one can avoid responsibility for a crime by deliberately ignoring the obvious.
 
 
 44
 If you are convinced that a defendant deliberately ignored a high probability that false claims were being submitted to CHAMPUS, an agency of the United States, or to a private medical insurance carrier, then you may find that the defendant knew that false claims were being submitted to CHAMPUS or to private medical insurance carriers.
 
 
 45
 But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that false claims were being submitted to CHAMPUS or to a private medical insurance carrier and that the defendant deliberately closed his or her eyes to what was obvious.
 
 
 46
 Carelessness, or negligence, or foolishness on the defendant's part is not the same as knowledge and is not enough to convict. This, of course, is all for you to decide.
 
 
 47
 Ladies and gentlemen, knowledge of the existence of a conspiracy may not be avoided by closing one's eyes to what was going on about him or her. In making the determination of whether the defendants, or either or them, was aware of the existence of a conspiracy, you may consider the evidence of the frequency of contact and their opportunity to perceive the scope and nature of any conspiracy and the role, if any, that the defendant had in furtherance of the conspiracy.
 
 
 48
 ....
 
 
 49
 Ladies and gentlemen, each defendant in this case has contended that he or she did not have the intent required to be guilty of the charged offense. The court has instructed you as to the elements of the offenses with which they are charged and emphasizes here that the elements or the facts the government must prove beyond a reasonable doubt for a defendant to be found guilty of the charged offense include that the defendant knowingly and voluntarily joined the conspiracy.
 
 
 50
 The government must prove that a mutual understanding existed among the conspirators to commit the crimes of submission of false claims against the United States or mail fraud. The government must prove beyond a reasonable doubt what the state of mind of the defendant was, that is, that the defendant must know the conspiracy's main purpose and have voluntarily joined it to help advance it or to achieve its goals.
 
 
 51
 Ladies and gentlemen, conspiracy requires an overt act and an agreement to commit the substantive offense. One cannot agree by mistake, accident, negligence, or misunderstanding, or other unintentional conduct; rather, the defendant must knowingly and intentionally have joined the scheme and must have the state of mind required by the substantive offenses that form the objects of the conspiracy.
 
 
 52
 Thus for you to find a defendant guilty, the government must prove beyond a reasonable doubt that the defendant had the intent to defraud or deceive.
 
 
 53
 If you find that a defendant did not have the intent to defraud or to deceive or if you have a reasonable doubt that a defendant had this intent, then you must return a verdict of not guilty as to this defendant because absence of the intent to defraud or deceive is a complete defense to the charge in this case.
 
 
 54
 Sometimes absence of this intent to defraud is called good faith. A defendant does not, however, act in "good faith" if, even though he or she honestly holds a certain opinion or belief, that defendant also knowingly makes false or fraudulent pretenses, representations, or promises to others.
 
 
 55
 Remember, that the burden of proving the defendant's state of [ ] mind is always on the government, because the defendant does not have an obligation to prove anything.
 
 
 56
 (App. 519-31.)
 
 
 57
 First, Peter Cates and Buller contend the jurors were not adequately instructed on their theories of defense. Peter Cates's defense was that he was unaware of his father's material false representations to insurance companies--the same misrepresentations Paul Cates had been making to the insurance companies regarding his professional qualifications for many years. Thus, Peter Cates argues he did not know his father's stated qualifications were false, and he could not know that his father was involved in a fraudulent scheme. Buller's defense was that she believed Paul Cates had received instructions from the insurance companies to fill out the forms in a certain way--the insurance companies requested that the claims be for fictitious office visits rather than tuition charges. Both Peter Cates and Buller maintain that because they did not know Paul Cates was defrauding anyone, they did not have the specific intent to defraud, and they cannot be guilty of conspiracy.
 
 
 58
 In challenging the court's charge to the jury, these defendants focus on the second to last paragraph of the instructions. They maintain this language precludes a good faith defense when fraudulent misrepresentations are knowingly made; thus a finding of guilt was mandatory once the jury found that these defendants knew the submitted claims contained false statements. This instruction, they reason, nullifies their defense because the issue of whether or not either of them intended to defraud the insurers is moot.
 
 
 59
 Instead of looking exclusively at the single paragraph cited, we must review the instructions as a whole. Twice the jury was informed that a defendant cannot be found guilty unless "the defendant knew the conspiracy's main purpose, and that the defendant voluntarily joined the conspiracy intending to help advance or achieve its goals." The jury was also instructed that "to find a defendant guilty, the government must prove beyond a reasonable doubt that the defendant had the intent to defraud or deceive." These statements predicate a finding of guilt on a finding of intent to defraud, which is consistent with the theories of defense. Therefore, the jury was adequately charged on Peter Cates's and Sylvia Buller's theory of defense.
 
 
 60
 Relying on a string of Second Circuit cases, Peter Cates and Buller next contend that it was error for the district court to instruct the jury on deliberate ignorance when they were charged with conspiracy. This argument stems from the premise that, unlike a substantive offense, to be found guilty of conspiracy, there must be a meeting of the minds. See, e.g., United States v. Ciambrone, 787 F.2d 799, 810 (2d Cir.) ("membership in a conspiracy cannot be proven by conscious avoidance, since the requisite mental state for conspiracy is intent"), cert. denied, 479 U.S. 1017 (1986).
 
 
 61
 Deliberate ignorance instructions may be given under certain circumstances, even if the defendants are charged only with conspiracy. In United States v. Fletcher, 928 F.2d 495, 502 (2d Cir.), cert. denied, 112 S.Ct. 67 (1991), the court stated that "[w]e have repeatedly held that a conscious avoidance charge is appropriate where the knowledge of the fraudulent goals of a conspiracy, as contrasted with knowing and intentional participation in the conspiracy, is at issue." Here, Cates and Buller claim they did not know the insurance companies were being defrauded. In other words, they claim they did not have knowledge of the fraudulent goals of the conspiracy. This is the situation discussed in Fletcher where such an instruction was found appropriate. Cf. United States v. Lee, 991 F.2d 343, 351 (6th Cir.1993) (approving the use of a deliberate ignorance instruction even though the offense at issue was conspiracy to possess cocaine with intent to distribute). Moreover, when the jury instructions are considered as a whole, we find they were fair.
 
 
 62
 Peter Cates also contends that the jury charge impermissibly shifted the burden of proof to him to establish his innocence. In United States v. Lawson, 780 F.2d 535, 542 (6th Cir.1985), this court found that by using a willful ignorance instruction, the district court did not "lessen the burden placed on the government to prove the necessary elements of the offense beyond a reasonable doubt." Furthermore, the instructions given here are replete with references to the government's burden, and conclude by stating "that the burden of proving the defendant's state of mind is always on the government, because the defendant does not have an obligation to prove anything." For these reasons, we find Peter Cates's contention to be without merit.
 
 E.
 
 63
 Both Buller and Peter Cates assert that there was insufficient evidence to convict either of them of conspiracy. When reviewing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984), cert. denied, 498 U.S. 822 (1990).
 
 
 64
 Buller contends that the evidence, at the most, demonstrates that from 1985 through 1990 she passed claim forms between the parents of children at Warner-Robbins Christian Academy and Paul Cates; that she assisted in completing some of these forms; and that she submitted claims for her own children, which listed office visits between a "Dr. Paul W. Cates" and her children that did not occur. None of these facts, Buller argues, prove that she ever was aware of the fraud or intended to partake in it. Buller cites the testimony of many other witnesses, including parents and school officials, that they too had been misled by Paul Cates. They believed he was a doctor and that the insurance claims were supposed to be filled out in that manner. Moreover, Buller notes that Paul Cates had CHAMPUS and Blue Cross/Blue Shield provider numbers, so there was no reason for her to know of the fraud.
 
 
 65
 The government responds that there is ample evidence on which a jury could find that Buller was aware of Paul Cates's scheme and knowingly participated in it. She knew that CHAMPUS was paying on claims she submitted for her children for "outpatient psychiatric care," when the real basis for the claims was to obtain reimbursement for school tuition. She also knew that EFEA bills attached to the claims listed multiple "established patient visits" when no visits took place. Given facts such as these, we believe the jury could have found Buller intended to join the conspiracy.
 
 
 66
 Peter Cates argues that the evidence against him does not establish that he knew his father was misrepresenting his credentials, or that there was anything illegal or fraudulent about the work his father was doing through the Talent Development Programs. There was much evidence presented at trial, however, that belies this contention. Peter Cates's sister testified that Paul Cates was only home approximately 20 days a year, and that Peter Cates went through the mail in their father's absence. Isobel Cates, Peter's mother, described Peter's responsibilities as office work, answering the telephone, handling correspondence, filing, and working with the computer. In general, the record suggests Peter Cates played an active role in the management of EFEA. As the district court stated, Peter Cates, "[a]s office manager of the corporation, ... clearly knew the scheme that his father ... perpetrated. His own conduct allowed the conspiracy to grow and to continue." (App. 609.) We cannot say that a juror reasonably could not find Peter Cates guilty of conspiracy on this evidence.
 
 F.
 
 67
 Peter Cates further argues that the district court abused its discretion in refusing to give him an adjustment for his minimal or minor role in the conspiracy. This court gives due deference to a trial court's determination of whether a defendant played a minor role in the offense, and will "disturb that decision only if clearly erroneous." United States v. Chalkias, 971 F.2d 1206, 1217 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992). The defendant has the burden of proving by a preponderance of the evidence mitigating factors that entitle him to a downward revision of his offense level. United States v. Kingston, 922 F.2d 1234 (6th Cir.1990), cert. denied, 111 S.Ct. 2054 (1991). Based upon the same evidence we found sufficient to support Peter Cates's conviction, we also find the district court was not clearly erroneous in denying his request for a downward adjustment.
 
 
 68
 AFFIRMED.
 
 
 69
 MERRITT, Chief Judge, dissenting.
 
 
 70
 I agree with the court regarding the sentencing of Paul Cates. I disagree that the district court's instruction to the jury, taken as a whole, adequately presented defendants' theory of the case to the jury. I would remand for a new trial for defendants Peter Cates and Sylvia Buller on the basis of this error.
 
 
 71
 Defendants' theory of the case was that they did not intend to defraud the insurers because they relied in good faith upon Paul Cates' instruction that the insurers required that they list fictitious office visits on the insurance forms. Many parents and school employees included the same fraudulent information on the forms they submitted. All of them, including the government's witness, Ms. Starnes, claimed that they were duped by Paul Cates into believing that the forms were supposed to be filled out in this manner. The government argues that, unlike everyone else involved in this scheme, defendants were not fooled by Paul Cates. The government contends that defendants not only knew they were filing false claims, but that they intended to file them for the purpose of deceiving the insurance companies. The distinction between intending to file false information and intending to deceive the insurance companies is critical in this case, since that is what distinguishes the defendants from all the unwitting participants, such as Ms. Starnes.
 
 
 72
 It is crucial that the court carefully focus the jury's attention on this distinction because it is the defendants theory of the case. The court is required to instruct the jury on it and failure to do so is reversible error. U.S. v. McGuire, 744 F.2d 1197 (6th Cir.1984). The court did not adequately convey this distinction. The charge the court delivered regarding the good faith defense was narrowly focused and did not fully explain the defendants' theory:
 
 
 73
 If you find that a defendant did not have the intent to defraud or to deceive or if you have a reasonable doubt that a defendant had this intent, then you must return a verdict of not guilty as to this defendant because absence of the intent to defraud or deceive is a complete defense to the charge in this case.
 
 
 74
 Sometimes absence of this intent to defraud is called good faith. A defendant does not, however, act in "good faith" if, even though he or she honestly holds a certain opinion or belief, that defendant also knowingly makes false or fraudulent pretenses, representations or promises to others....
 
 
 75
 (App. 530). This charge allows for conviction based solely on the known entry of false information on the claims, which defendant Buller, at least, had already admitted and most of the government's witnesses conceded. Although elsewhere the court instructs that the government must prove that the defendants had the intent to deceive, as a whole the instruction fails to illustrate how defendants' good faith reliance on the representations of Paul Cates could preclude this intent. The instruction in McGuire is an example of what the law requires in a case such as this:
 
 
 76
 The defendants, however, presented evidence that they believed that they had a right to act as they did, and that they acted in belief that they were within their legal rights in view of all the circumstances as they viewed them.
 
 
 77
 744 F.2d at 1201 n. 2.
 
 
 78
 The government argues that the charge given was a correct statement of the law: "the good faith defense requires a genuine belief that the information sent or given is true." U.S. v. Dunn, 961 F.2d 648, 650 (7th Cir.1992) (citation omitted). This is one correct definition of good faith, but it does not provide a defense in the instant case. Apparently, the district court derived the given charge from a proposed charge on mail fraud. 2 Devitt, Blackmar and O'Malley Sec. 40.16. That proposal addressed a situation similar to that found in Dunn where the specific intent element of the crime is knowingly making a material misrepresentation. Thus, a good faith defense would require a genuine belief that the information given is true. In contrast, the conspiracy charge at issue in the present case requires specific intent to defraud.[1] Defendants' knowledge regarding the falsity of the information they submitted is not determinative with respect to their good faith defense. They argue good faith only with respect to the issue of intent. If defendants believed Paul Cates' explanation that the insurance companies required them to fill out the forms as he prescribed, it does not matter that they knew that they submitted false information. They must also have intended to defraud the companies. The district court's instruction did not adequately convey to the jury the crucial distinction between knowingly filing false information and intending to defraud the companies. I cannot say that this error did not have a significant impact on the outcome of this case and therefore I would remand for a new trial. I have difficulty distinguishing between the culpability of Ms. Starnes, who for months submitted the same forms knowing them to be false, and these defendants. It was crucial that the court make the defendants theory of the case clear, and I think the jury may well have been confused as to the elements of the crime in this case.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Although both the probation officer, in the presentence report, and the district court applied the pre-November 1, 1989, sentencing guidelines, none of the parties claim this is reversible error. Thus, we too will analyze Paul Cates's argument under the pre-November 1, 1989, sentencing guidelines
 
 
 [1]
 See, 18 U.S.C. Sec. 1341 ("Whoever, having devised or intending to devise any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses....")