**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arthur MCNEAL III, Defendant–**
**Appellant.**

**No. 00–4401.**

United States Court of Appeals,
Sixth Circuit.

July 9, 2002.

Before MARTIN, Chief Circuit Judge; KEITH and KENNEDY, Circuit Judges.

PER CURIAM.

Arthur McNeal III appeals his jury conviction of two counts of possession with intent to distribute cocaine and cocaine base. He raises two issues on appeal. He claims that the district court erroneously permitted the government to submit unfairly prejudicial and irrelevant character evidence. He also claims that the verdict was against the manifest weight of the evidence. Neither claim is persuasive. Accordingly, we AFFIRM McNeal's conviction.

### I.

On November 20, 1997, officers searched Regina Jackson's house at 233 West Kimby Street, Lima, Ohio. Ms. Jackson was not home, but McNeal was sitting in the living room with a male teenager. The only other people in the house were Ms. Jackson's three young children and a fifteen-year-old babysitter. The teenager had two rocks of crack cocaine in his pockets and McNeal, though he claimed to be unemployed, carried $1,393 in cash. In the upstairs closet, the officers found seventeen grams of crack cocaine, seventy grams of powder cocaine, and two guns. In plain view, they saw scales and a plate with two razor blades and cocaine residue. While the officers were there, several people called who wanted to buy cocaine and there was a steady stream of visitors to the house also looking to buy cocaine.

Ms. Jackson, after learning her house had been searched, contacted the police and told them that the drugs and the guns belonged to McNeal and suggested that they check the items for finger prints. In July, 1998, Ms. Jackson pleaded guilty to conspiring to sell cocaine out of her house. As part of her plea agreement, she agreed to testify against the other people involved.

Her brother, Steve Jackson, also volunteered to help. He and his girlfriend, Toni Williams, made two controlled buys from McNeal on April 22 and April 24, 1998, both at McNeal's house. Before each controlled buy, officers searched Jackson and

Williams in accordance with the standard police procedure for searching confidential informants. The process is to shed the informant down to an inner layer of clothing, check their waistband, and then do a complete pat-down of their person, including checking their shoes and socks. After the search, Jackson was wired, and he and Williams set off for McNeal's. The police watched them as they drove, but it was impossible to maintain constant surveillance.

On the first day, Mr. Jackson bought 6.2 grams of crack cocaine from McNeal. Two days later, he bought 13.5 grams of powder cocaine and reported that he saw another four to five ounces at McNeal's house. During his second purchase, McNeal became suspicious of Mr. Jackson and attempted to search him for a wire. When Mr. Jackson reported McNeal's suspicions, the police decided not to attempt another controlled buy, but to get a search warrant. Three hours later, the police arrived at McNeal's residence at 511 W. Market with a search warrant. The police found a cellophane bag that had teeth marks and saliva on it. McNeal was taken into custody, where the police observed that he was acting high strung, his pupils were dilated, he rocked back and forth, and he repeated the same phrases over and over.

## II.

On May 6, 1998, a two count indictment was issued against McNeal for possession with intent to distribute controlled substances in violations of 21 U.S.C. § 841(a)(1). Count one charged him with intent to distribute on April 22, 1998, and count two charged him with intent to distribute on April 24.

On January 20, 1999, the government filed a notice of intent to use rule 404(b) character evidence. On February 1,

McNeal filed a motion in limine to exclude testimony of evidence pertaining to the search of Ms. Jackson's home. Soon thereafter, the district court held a motion hearing. On March 30, the court issued an order allowing the government to introduce testimony for the sole purpose of showing that McNeal was in Ms. Jackson's house at the time of the search. The court declined, however, to rule on what other testimony regarding the search may be admitted, and therefore decided not to rule on the motion until trial.

On the eve of the trial, the government filed a memorandum in support of admitting testimony pertaining to the search at Ms. Jackson's. It argued that it was not rule 404(b) character evidence, but was background evidence because it showed a continuing pattern of illegal activity and was inextricably intertwined with its case-in-chief. The district court agreed that the testimony regarding the search was admissible background evidence. At trial, the two officers who searched Ms. Jackson's house testified about the search. Ms. Jackson testified that she pleaded guilty to conspiring to sell drugs from her home and that she had conspired with McNeal. She testified that the cocaine that she sold out of her house she bought from McNeal. She also testified that after the search, McNeal paid for her lawyer until she pleaded guilty.

On June 9, 2000, after a three-day trial, the jury returned a guilty verdict on both counts. Now, McNeal appeals his conviction on two grounds claiming (1) that testimony pertaining to the search of Ms. Jackson's house was irrelevant and unfairly prejudicial character evidence, and (2) that the manifest weight of the evidence does not support the jury verdict.

## III.

Federal Rule of Evidence 404(b) prohibits the admission of "other crimes, wrongs,

or acts ... to prove the character of a person in order to show that he acted in conformity therewith." Fed.R.Evid. 404(b). Crimes, wrongs or acts may be admitted, however, if the party cites a specific proper purpose for which the evidence is being offered, such as to show motive or intent. *Id.* In other words, there must be a reason to admit the crime, wrong or act, other than to show that the defendant has a bad character. *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir.2000). Once a legitimate purpose has been cited, then the district court must determine whether the probative value of the identified purpose outweighs the risk of unfair prejudice. *Id.* When we review evidence admitted under Rule 404(b), we review *de novo* whether the evidence was admitted for a legitimate purpose, and review for abuse of discretion the district court's determination that the probative value is not substantially outweighed by the unfairly prejudicial effect. *Id.*

However, Rule 404(b) is inapplicable if the evidence of other crimes, wrongs or acts is "background" evidence to the crime charged. *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995); *Hardy*, 228 F.3d at 748; *see also United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir.2000); *United States v. Paulino*, 935 F.2d 739, 755 (6th Cir.1991). Background evidence is typically admissible because it is relevant to the extent that "the jury is entitled to know the setting of a case ... and cannot be expected to make its decision in a void." *United States v. Vincent*, 681 F.2d 462, 465 (6th Cir.1982) (quoting *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir.1977)). Such evidence is "inextricably intertwined with evidence of the crime charged in the indictment." *Barnes*, 49 F.3d at 1149. So for example, background evidence may have a "causal, temporal or spatial connection with the charged offense," *Hardy*, 228 F.3d at 748, or may tend to show "a single

criminal episode ... [or] a continuing pattern of illegal activity." *Barnes*, 49 F.3d at 1149. Often background evidence is "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witnesses testimony, or completes the story of the charged offense." *Hardy*, 228 F.3d at 748. Then, it is not analyzed under the Rule 404(b) framework, but is admitted simply because it is relevant, as it explains the background of the case to the jury.

McNeal argues that the testimony from the search of Ms. Jackson's house was admitted in violation of Rule 404(b)'s prohibition against admitting other crimes, wrongs, or acts for the sole purpose of showing bad character. He also argues that even if there was a legitimate purpose for admitting the bad acts under one of the exceptions set out in Rule 404(b), the district court abused its discretion in determining that the probative value of that purpose outweighed the risk of unfair prejudice. The district court disagreed with McNeal, and so do we.

The district court determined that the evidence from Ms. Jackson's house was background evidence, and so Rule 404(b) was inapplicable. It found the evidence so "blended, connected, or related to the charges here at issue that proof of one incidentally involves the other." Concluding that the testimony "does not come in as 404(b) evidence," it reasoned that the evidence was "of a continuum or relationship between the witness and the defendant." The district court noted, "the provision of drugs to the witness for the purpose of resale through Mr. McNeal is certainly not character evidence.... The issue here is on multiple occasions did Ms. Jackson have the delivery of drugs from Mr. McNeal for the purpose of re-

**168**

sale, pure and simple. Its not a question of character evidence under [404.]"

■ We agree that the testimony is background evidence. The evidence "forms an integral part of a witnesses testimony," *Hardy*, 228 F.3d at 748, because it explains Ms. Jackson and McNeal's relationship, why she pleaded guilty, why she is testifying against him, that he had supplied drugs to her for resale, and that he originally paid for her lawyer. It also tends to explain Mr. Jackson's relationship with McNeal, and why he volunteered to serve as an undercover informant. The evidence is also "a prelude to the charged offense" as it explains how McNeal came to be investigated and charged. *Id.* Finally, the evidence tends to show "a continuing pattern of illegal activity." *Barnes*, 49 F.3d at 1149. Thus, the evidence from the search of Ms. Jackson's house is relevant background evidence which was properly introduced.

## IV.

Next, McNeal argues that the jury's guilty verdict is against the manifest weight of the evidence. To address this question, we "view[ ] the evidence in the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. White*, 932 F.2d 588, 589 (6th Cir.1991). It is a "very difficult burden" for an appellant to overcome. *United States v. Romano*, 970 F.2d 164, 165 (6th Cir.1992). The test is the same for direct and circumstantial evidence. *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir.1989). This court does not weigh the evidence or determine the credibility of witnesses. *United States v. Warner*, 971 F.2d 1189, 1195 (6th Cir.1992).

■ McNeal offers two theories as to why the evidence does not support the verdict. He presented both theories to the jury and they found them unpersuasive.

### A.

First, he argues that Steve Jackson and his girlfriend, Toni Williams, could have hidden cocaine in their underwear, and then pretended that they bought the drugs from McNeal. The officers testified that they thoroughly searched Jackson and Williams prior to sending them off to make a controlled purchase from McNeal. They searched Williams' clothes, purse and bra, but not her underwear. The officer stated that when the informants came back from their meeting with McNeal and gave them the drugs, the drugs did not look or smell like they had been removed from either of the informants' underwear. Also the officers testified that they carefully watched the two as they drove to McNeal's, though it was impossible to maintain constant surveillance. The jury did not believe that Mr. Jackson or Ms. Williams hid drugs in their underwear and then surreptitiously removed the packages while under police surveillance. Instead, they believed that they bought the cocaine from McNeal. We have no reason to find the jury's rejection of McNeal's proffered theory to be against the manifest weight of the evidence.

### B.

McNeal next argues that the manifest weight of the evidence contradicts the jury verdict because the audio tape recordings, which are partially inaudible, do not contain explicit statements indicating drugs were being exchanged for money. However, the tapes were not the sole source of evidence. The statements on the tapes corroborated the testimony of the witnesses and the observations of the police.

The fact that the tapes do not contain explicit statements indicating drugs were sold is insufficient for this court to decide that the evidence does not support the jury's verdict that McNeal sold cocaine on both April 22 and April 24.

## V.

Because McNeal's arguments are meritless, we AFFIRM his conviction.