[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 9, 2006
THOMAS K. KAHN
CLERK

No. 05-16333
Non-Argument Calendar

_____

D. C. Docket No. 04-00308-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES BOWE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(August 9, 2006)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Charles Alexander Bowe appeals his convictions and sentences for

conspiracy to import and importation of five kilograms or more of cocaine, conspiracy to possess with intent to distribute and conspiracy to distribute five kilograms or more of cocaine, and possession with intent to distribute five kilograms or more of cocaine. See 21 U.S.C. §§ 841(a)(1), 846, 952(a), 963. Bowe argues that his convictions should be reversed because the district court erroneously admitted extrinsic evidence and hearsay testimony and erroneously denied his second motion for a continuance of trial. He also argues that the district court erroneously calculated the guidelines range when it imposed his sentence. We affirm.

## I. BACKGROUND

On February 2, 2005, Bowe, Damian Coverley, and Omar Theophilus were charged in a superseding indictment with conspiracy to import cocaine, importation of cocaine, conspiracy to possess with intent to distribute cocaine, and possession with intent to distribute cocaine. After plea negotiations failed, Bowe was scheduled to proceed to trial on July 18, 2005. On July 14, 2005, Bowe moved to continue his trial date to complete his defense preparation. The motion was granted, and the trial date was reset for August 1, 2005.

On the morning of trial, Bowe filed a second motion for a continuance. Bowe argued that the continuance was necessary to permit his counsel time to

review extensive discovery material that was produced by the government on July 26, 2005. The district court denied the motion, and trial proceeded.

At trial, the government presented evidence of a conspiracy between Bowe, Coverly, and Theophilus to import cocaine to the United States from the Bahamas. Coverly testified that he met Bowe in 2001 and began a relationship in which Bowe would provide money and Coverly would buy cocaine, import it to the United States, and sell it. Coverly then returned the proceeds to Bowe and was paid a fee. Coverly testified that he and another conspirator usually used Bahamas Air or a cruise ship to import the drugs.

Coverly testified that, on one occasion, he and Bowe traveled to New York where they picked up seven or eight roller bags filled with cash. In New York, Coverly and Bowe met Kevin Frater, a friend of Bowe. Coverly testified that he and Bowe flew from New York to California with a stop in Kansas to refuel. Coverly testified that in California they swapped the money in the roller bags for cocaine and returned to New York, again stopping in Kansas for fuel. In New York, Frater met Coverly and Bowe at the airport, picked up the cocaine, left and returned in about an hour and a half. Coverly, Bowe, and Frater then returned to Miami. Bowe objected to this testimony on the ground that it was irrelevant and not within the charged conduct. The district court overruled the objection.

3

Coverly then testified regarding another drug transaction. He testified that, a short time later, a man named Austin Williams was stopped by drug enforcement agents in Kansas with 155 kilograms of cocaine when his plane stopped to refuel. Coverly testified that Williams tried to call Frater several times while Coverly, Bowe, and Frater were together. Coverly testified that he, Bowe, and Frater considered going to Kansas City to intercept the drugs but decided not to go because they were suspicious that Williams had been arrested. Frater then became nervous and decided he needed to leave the country. Coverly testified that he and Bowe took Frater to the airport where Frater left on one of Bowe's airplanes. Bowe did not object to Coverly's testimony.

Coverly next testified regarding a transaction in November and December of 2004. Coverly testified that in November 2004, Bowe gave him $56,000. Coverly then concealed the money and flew to the Bahamas on one of Bowe's planes. In the Bahamas, Coverly gave the money to Theophilus who purchased eight kilograms of cocaine. Theophilus then transported the cocaine, on a private airplane, to Savannah where Coverly was to meet him at the airport. Coverly then planned to sell the cocaine in South Carolina before returning the proceeds to Bowe. Coverly was intercepted by DEA agents before he could sell the cocaine in South Carolina.

4

Finally, Coverly testified about taped conversations he had with Bowe, after Coverly had been arrested and agreed to cooperate with the government. Coverly testified that in a conversation about auto parts, he and Bowe were actually discussing the quality and sale price of the cocaine that Theophilus had purchased with the $56,000 fronted by Bowe. Coverly explained that "five parts" was five kilograms of cocaine and that a reference to some parts being "aftermarket" meant that the cocaine was not one hundred percent. Coverly explained that in other recorded conversations he and Bowe were trying to set up a time to meet for Coverly to give Bowe the money. The money was to be transferred at the Home Depot in Weston, Florida.

At the meeting to transfer the money, Coverly, who was still in the custody of the DEA, wore a recording device and a camera. Coverly testified that he and Bowe discussed the amount of money he received for the cocaine. Coverly then went to his car to retrieve a bag of money to give to Bowe. When Coverly went to Bowe's car with the bag, Bowe was arrested. Coverly also testified that he entered a plea agreement with the United States and testified so that he might receive a lesser sentence.

On the second day of trial, a DEA agent testified about the seizure of drugs in Kansas that Coverly had described on the previous day. After receiving a tip,

5

DEA agents searched a Falcon 20 business jet that was refueling in Salina, Kansas. The agents discovered six large roller suitcases packed with cocaine and arrested Williams, who was on the plane. Williams agreed to cooperate with the agents and identified Frater as a contact. Williams then called Frater numerous times at the direction of the DEA agents to arrange a pick up of the cocaine but was not able to make contact with Frater. Williams did not identify Bowe as a contact, although Bowe's number was listed in Williams's telephone. Bowe did not object to this testimony.

The last witness for the government was Robert Nylund, a pilot who had flown airplanes for the Bowe family business. Nylund testified that, in December 2002, he flew Frater to Havana, Cuba. Nylund testified that Frater told him that Frater needed to leave the country because a friend had been arrested for drugs in Salina, Kansas, that he was scared, and that he could not go back. Bowe objected to this testimony as hearsay, but the district court overruled the objection as an exception under the coconspirator rule. Nylund testified that in July 2004 he began to work as an informant for the DEA. After he was approached by Coverly and Theophilus to transport drugs, Nylund contacted the DEA. On cross-examination, Nylund testified that Bowe had never asked him to transport drugs.

After the government rested, Bowe moved to strike the testimony about the

6

seizure of cocaine in Salina, Kansas, as evidence that was not an intrinsic part of the alleged conspiracy under Federal Rule of Evidence 404(b). Bowe also moved for a judgment of acquittal on each count and a continuance because many of his witnesses were not yet present. The district court denied each motion.

Bowe presented his defense. After calling several witnesses, Bowe renewed his request for a continuance because several witnesses had not arrived or refused to come to the United States from the Bahamas. Bowe proffered the testimony he expected each witness to give. The district court did not grant a continuance, and Bowe rested. Bowe also moved for a mistrial on the ground that he was not able to present a defense. The court denied the motion. The jury found Bowe guilty of all charges.

Before sentencing, the probation office prepared a presentence investigation report. The probation officer assigned a base offense level of 38 because the offense involved 150 kilograms or more of cocaine. Two points were added for the use of an aircraft, other than a regularly scheduled commercial air carrier, in the importation of the cocaine, and four points were added for Bowe's role as an organizer or leader. After a one point adjustment under chapter five of the Sentencing Guidelines, Bowe's total offense level was 43. With an offense level of 43 and a criminal history category of I, the guideline term of imprisonment for

Bowe was life.

Bowe objected to the inclusion of the cocaine that was seized in Salina, Kansas, as relevant conduct and to the managerial-role enhancement. Bowe also objected to the enhancement for use of a non-commercial aircraft to import the drugs. The district court overruled the objections and sentenced Bowe to 384 months of imprisonment.

## II. STANDARD OF REVIEW

The admission of evidence by the district court is reviewed for abuse of discretion. United States v. Arbolaez, 450 F.3d 1283, 1289 (11th Cir. 2006). The denial of a motion for a continuance is also reviewed for abuse of discretion. United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005). "We review the district court's factual findings for clear error and the court's application of the sentencing guidelines to the facts de novo." United States v. McGuinness, 451 F.3d 1302, 1304 (11th Cir. 2006). Issues raised for the first time on appeal are reviewed for plain error. Baker, 432 F.3d at 1202. Under the plain error standard, we may correct an error not raised at trial if there is "(1) error, (2) that is plain, and (3) that affects substantial rights[, and] (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1202-03 (citation omitted).

## III.  DISCUSSION

On appeal, Bowe makes three arguments regarding his convictions and three arguments regarding his sentence.  We address Bowe's arguments concerning his convictions first.  We then address his sentence.

### *A.  The District Court Did Not Err During Trial*

Bowe argues that the district court abused its discretion twice in admitting evidence and then in denying his second motion for a continuance.  First, Bowe argues that the district court abused its discretion when it denied his motion to exclude Rule 404(b) evidence concerning the drugs seized in Salina, Kansas. Bowe argues that the evidence linking him to the drug transaction was weak and the evidence showed at most that Bowe was associated with a drug dealer and had knowledge of the drug transaction.  Because Bowe did not preserve this objection at trial, our review is for plain error.  Baker, 432 F.3d at 1202.

Bowe's argument fails.  The district court did not err, plainly or otherwise, when it admitted the evidence of the Salina drug transaction because the evidence was not extrinsic under Rule 404(b).  "Evidence of criminal activity other than the charged offense is not extrinsic under [Federal Rule of Evidence] 404(b) if it is . . . inextricably intertwined with the evidence regarding the charged offense" United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir. 1996).  Because the Salina

evidence was inextricably intertwined with the evidence of the conspiracy with which Bowe was charged, the district court did not abuse its discretion when it allowed the evidence.

Second, Bowe argues that the district court abused its discretion by admitting the hearsay statements of Frater during the testimony of Robert Nylund. Nylund testified to the statements of Frater, whom Nylund flew from the Bahamas to Cuba when Frater was fleeing the United States after the drugs were seized in Salina. This argument fails. In the light of the evidence linking Frater and Bowe to a drug conspiracy, the district court did not clearly err when it concluded that Frater and Bowe were parties to the same conspiracy and that Frater's statements to Nylund were in furtherance of that conspiracy.

Third, Bowe argues that the district court abused its discretion when it denied his second motion for a continuance. We disagree. Bowe failed to demonstrate that his proffered witnesses would testify to any material issue or that he did not have adequate time to prepare a defense. See United States v. Wright, 63 F.3d 1067, 1071 (11th Cir. 1995).

### B. The District Court Did Not Err When It Sentenced Bowe.

As to his sentence, Bowe argues that the district court erred in determining his relevant conduct and then in applying two enhancements. First, Bowe argues

10

that the district court erred when it included the cocaine seized in Salina as part of his relevant conduct. This argument fails. Relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The defendant is accountable for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." Id. Application n.2.

The district court appropriately considered as relevant conduct the cocaine seized in Salina, Kansas. Coverley testified that, shortly before Williams was apprehended, Coverly and Bowe transported drugs in the same manner as Williams, and, after Williams was apprehended, Bowe and Frater discussed how to retrieve the cocaine. The district court did not clearly err when it found that the cocaine seized in Salina was "reasonably foreseeable" to Bowe.

Second, Bowe argues that the managerial-role enhancement was improperly applied to him for three reasons: (1) Coverley operated independently; (2) Theophilus did not know Bowe; and (3) Bowe was, at best, a banker in the drug transaction who managed only assets, not people. This argument fails. Section 3B1.1 of the Guidelines provides for a four-level enhancement when "the defendant was an organizer or leader of a criminal activity that involved five or

11

more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Sufficient evidence was presented for the district court to conclude that Bowe directed the activities of other members of the conspiracy, specifically Coverly. The district court did not clearly err when it found that Bowe qualified for this enhancement.

Third, Bowe argues that the district court erred in applying an enhancement for use of a non-commercial aircraft in the importation of drugs. See U.S.S.G. § 2D1.1(b)(2)(A). This argument also fails. Section 2D1.1 of the Guidelines provides for a two-level increase if the "defendant unlawfully imported or exported a controlled substance under circumstances in which . . . an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance." U.S.S.G. § 2D1.1(b)(2)(A). It was reasonably foreseeable that aircraft would be used to import drugs from the island of the Bahamas to the United States. The district court did not clearly err when it applied the enhancement.

## IV. CONCLUSION

Bowe's convictions and sentences are

**AFFIRMED.**