[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 19, 2006
THOMAS K. KAHN
CLERK

No. 06-11479
Non-Argument Calendar

_____

D. C. Docket No. 05-00261-CR-SLB-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

BARRY GENE HOLDER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(October 19, 2006)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

The government appeals Barry Gene Holder's sentence of one year and one month for possession of a machine gun, in violation of 18 U.S.C. § 922(o), and

possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). On appeal, the government argues that (1) the district court erred by not applying an 8-level enhancement under U.S.S.G. § 2K2.1 based on Holder's admitted unlawful possession of 133 firearms, and (2) Holder's sentence is unreasonable. After careful review, we vacate Holder's sentence and remand for resentencing consistent with this opinion.

Because the government objected to the district court's denial of the § 2K2.1 enhancement below, we review the court's factual findings for clear error and its application of the Guidelines de novo. United States v. McGuinness, 451 F.3d 1302, 1304 (11th Cir. 2006); United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 126 S. Ct. 812 (2005). Sentences imposed under an advisory Guidelines system are reviewed for "unreasonableness." United States v. Booker, 543 U.S. 220, 261 (2005). However, "Booker did not affect 18 U.S.C. section 3742(f), which mandates remand of any case in which the sentence was imposed as a result of an incorrect application of the sentencing guidelines." United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). "Thus, whether the district court misapplied the Guidelines remains . . . subject to de novo review." United States v. McVay, 447 F.3d 1348, 1353 (11th Cir. 2006).

The facts relevant to the government's sentencing claims are these. On July 1, 2005, Holden was charged with one count of possession of a machine gun, in violation of 18 U.S.C. § 922(o), and one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). He pled guilty to both counts and, in a written plea agreement, stipulated to the factual basis for the plea and agreed that the stipulated information would be used "for sentencing purposes." According to the Factual Basis provision in the plea agreement, on January 24, 2005, federal and local law enforcement agents executed a search, pursuant to a warrant, of his home. During the search, authorities discovered 133 firearms, none of which were registered to Holder, including a SWD Street sweeper 12-gauge with magazine drum, a silencer, a Colt AR-15 automatic rifle, and a Colt .45 caliber revolver that had been reported stolen. The Factual Basis also stated that Holder told the agents that he ingested three to four Oxycontin pills a day and spent $100 per day on his drug habit.

The Presentence Investigation Report ("PSI") assigned Holder a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(i), because he was a "prohibited person," by virtue of his status as an unlawful user of or person addicted to a controlled substance (Oxycontin), in possession of the firearms. The PSI recommended the following adjustments: (1) an 8-level increase, pursuant to

3

U.S.S.G. § 2K2.1(b)(1)(D), because of the number of firearms seized; (2) a 2-level increase, pursuant to U.S.S.G. § 2K2.1(b)(4), because one of the firearms was reported stolen; and (3) a 3-level reduction for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a), (b). The PSI recommended that Holder had a criminal history category I, but noted that Holder was then facing charges in state court for trafficking in Oxycontin. The state court action was based on the Oxycontin seized in his home during the January 24, 2005 search that resulted in the federal gun charges. With an adjusted offense level of 27 and a criminal history category I, Holder faced a Guidelines range of 70 to 87 months' imprisonment.

Holder filed the following objections to the PSI: (1) he challenged his status as a "prohibited person" under U.S.S.G. § 2K2.1(a)(4)(B)(i); (2) he objected to the enhancement under U.S.S.G. § 2K2.1(b)(1)(D), for the amount of guns involved, arguing that some of the guns were not functional; and (3) he objected to the enhancement under U.S.S.G. § 2K2.1(b)(4) based on the fact that he did not know that one of the firearms was stolen. At the sentencing hearing, Holder further argued that although the PSI's Guidelines calculations may have been correct, application of the range created an unduly harsh result.

4

At the start of the sentencing hearing, the district court stated that it intended to vary from the Guideline range because "[w]ell, it works with rendering an unjust result for sure, and I was just talking to the probation officer about that." The district court then asked the probation officer what would happen to the Guidelines range if it sustained Holder's objections (2) and (3). The probation officer responded that adjusting Holder's offense level from a 27 to a 17 would yield a range of 24 to 30 months' imprisonment, to which the district court responded it thought that range also was "too harsh." The court then indicated: "I'm going to give the sentence that I think is fair regardless of how I calculate the Guidelines." The court further stated that, with respect to Holder's objection (1), there was "no evidence before the court that, at the time he originally got those guns, he was a drug addict." It then sustained Holder's objection (2), noting "I'm not going to spend a whole lot of time analyzing this issue for this case. There's probably a good chance you can get me reversed if you appeal; but I can tell you, I'm going to impose the sentence, whatever the Guideline range is, whether I kept this in or not, I'm going to impose a sentence I think is fair for this man and this man's history."

After sustaining objections (1) and (2), Holder's adjusted offense level was a 19. With a criminal history category I, the Guidelines range was 30 to 37 months' imprisonment. The district court stated it was imposing a sentence of one year and

one day because that was the sentence Holder deserved, "whatever the correct guideline range calculations turn out to be." In imposing sentence, the court stated that the PSI indicated only that authorities were aware that Holder "was a drug user and had a lot of guns." In response, the government argued that the warrant to search Holder's home was based on several undercover drug buys that were not pursued in an effort to preserve the informant, to which the court responded:

> Of course, you could have stood up and said that before I imposed sentence. That might have made a difference on the sentence to me, even though it's not charged, that that's what made you all interested in him. That's a lot more serious than just being a drug user with guns in his house. If I had known that he was a distributor, that makes a big difference to me.

The district court nevertheless did not alter the sentence.

The district court then stated that it had considered the Guidelines range and the factors in 18 U.S.C. § 3553(a) and, in arriving at the sentence, had relied on the fact that Holder did not illegally obtain the firearms and had "no criminal history to speak of." With regard to the PSI's statement concerning the pending state charges against Holder for Oxycontin trafficking, the court said:

> I missed this. It's actually in the presentence report, trafficking Oxycontin. I think I was just thinking this was this case, because everything that's in here is really talking about this crime, do you see what I'm saying, in the presentence report, but then it shows that there's a pending charge, released on bond, awaiting action. But then when I read everything underneath that, it's the federal crime, and I just didn't put two and two together.

The district court noted that Holder could face a more substantial sentence for his pending charges in state court, but again did not alter its sentence. At the conclusion of the hearing, the government objected to the Guidelines calculations and the overall reasonableness of the sentence. This appeal followed.

First, the government argues that the district court erred by declining to increase Holder's base offense level by eight levels, pursuant to U.S.S.G. § 2K2.1(b)(1)(D), because, according to the undisputed facts of the factual basis for the plea agreement and the PSI, Holden was a "prohibited person" who unlawfully used, or was addicted to, a controlled substance while he possessed 133 firearms. Section 2K2.1(a) of the Sentencing Guidelines sets the base offense level for prohibited transactions involving firearms. See United States Sentencing Commission, Guidelines Manual, § 2K2.1(a) (Nov. 2004). Section 2K2.1(a)(6) provides for an enhanced offense level of 14 if the defendant "was a prohibited person at the time the defendant committed the instant offense." Id. at § 2K2.1(a)(6). Section 2K2.1(b)(1)(D), in turn, provides for an 8-level enhancement to a defendant's offense level if the offense involved 100 to 199 firearms. See United States Sentencing Commission, Guidelines Manual, § 2K2.1(b)(1)(D) (Nov. 2004). In determining the number of firearms under the forgoing provision, the district court should count only those guns "that were unlawfully sought to be

obtained, unlawfully possessed, or unlawfully distributed." Id. at comment. (n.6) (emphasis added). The commentary to § 2K2.1 defines a "prohibited person" by reference to 18 U.S.C. §§ 922(g) and 922(n), and therefore includes a person "who is an unlawful user of or addicted to any controlled substance." Id.; 18 U.S.C. § 922(g)(3).

Here, based on the uncontested facts before the district court, in calculating the Guidelines range, the court erred by failing to impose the 8-level enhancement for the 133 firearms that Holder unlawfully possessed. Holder admitted in his plea agreement that he used Oxycontin daily, and that the federal and local agents who executed the search warrant at his home on January 24, 2005 seized 133 firearms. Accordingly, the eight-level enhancement of § 2K2.1(b)(1)(D) applied. The district court erred in its application of that section -- and, accordingly, its calculation of the correct Guidelines range -- because it considered only whether Holder was an Oxycontin addict when he acquired the firearms, rather than when he possessed them. To support the enhancement under § 2K2.1(a)(6), we have required the government to show "the defendant was an 'unlawful user' of a controlled substance during the same time period as the firearm possession." United States v. Edmonds, 348 F.3d 950, 953 (11th Cir. 2003). Thus, the inquiry is not limited to whether Holder was an "unlawful person" when he acquired the

firearms, as the district court's analysis suggested, but rather the inquiry should also encompass a consideration of whether holder was an "unlawful user" of a controlled substance at the same time that he possessed the 133 firearms found at his house. Based on the factual statement supporting Holder's plea agreement with the government, it is clear that the enhancement applies here.

The district court also expressed its own personal disagreement with the outcome of a correctly calculated Guidelines range, which it thought was "too harsh," and indicated it was imposing a sentence of one year and one day because that was the sentence Holder deserved, "whatever the correct guideline range calculations turn out to be." After Booker, the district court remains obligated to consult and correctly calculate the Guidelines, although they now are only advisory. McVay, 447 F.3d at 1353; United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). "It is only after a district court correctly calculates the Guidelines range, which it still must do after Booker, that it may consider imposing a more severe or more lenient sentence." McVay, 447 F.3d at 1353.

The district court's foregoing errors -- not applying the § 2K2.1(b)(1)(D) enhancement and considering its own personal disagreement with the correctly calculated range -- resulted in an adjustment to the Guidelines range from 70 to 87 months' imprisonment to 30 to 37 months' imprisonment. The district judge then

9

proceeded to impose a sentence far below the lowest end of even the incorrectly calculated range, stating only that she had considered the § 3553(a) factors and that she was "giving [Holder] a chance. I'm a great believer in people being able to turn their lives around." Cf. McVay, 447 F.3d at 1357 (observing that "when imposing a sentence falling far outside of the Guidelines range, based on the § 3553(a) factors, "[a]n extraordinary reduction must be supported by extraordinary circumstances").[1]

On remand, because Holder admitted to all of the underlying facts necessary to enhance his base offense level under U.S.S.G. § 2K2.1(b)(1)(D) -- and, thus, the government's evidence at sentencing was uncontested on this point -- the district court shall apply the U.S.S.G. § 2K2.1(b)(1)(D) enhancement, thereby yielding an advisory range of 70 to 87 months' imprisonment. It then may impose "a more severe or more lenient sentence" based on its consideration of the 18 U.S.C. § 3553(a) factors.

**SENTENCE VACATED AND REMANDED.**

---

[1] The government also argues that Holder's sentence was unreasonable. Because the district court imposed sentence while working from an incorrectly calculated Guidelines range and we must remand on that basis, we leave it to the district court to consider in the first instance whether the § 3553(a) factors warrant a departure from the correctly calculated range of 70 to 87 months' imprisonment. We decline to reach the question of reasonableness at this point.

10