[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 7, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10578
Non-Argument Calendar
_____

D. C. Docket No. 08-80062-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN DELPECHE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 7, 2009)

Before BIRCH, CARNES and FAY, Circuit Judges.

PER CURIAM:

Kevin Delpeche appeals his sixty-six-month sentence imposed for

(1) knowingly making and possessing counterfeited and forged securities of an organization, in violation of 18 U.S.C. § 513(a), and (2) knowingly possessing or using without lawful authority one or more means of identification of another person, in violation of 18 U.S.C. § 1028(a)(7). On appeal, Delpeche argues that the district court erred by issuing him a three-level role enhancement pursuant to U.S.S.G. § 3B1.1(b) (Nov. 2008). For the reasons that follow, we AFFIRM.

## I. BACKGROUND

In a superseding indictment, a federal grand jury charged Delpeche with: (1) knowingly making and possessing counterfeited and forged securities of an organization, 18 U.S.C. § 513(a) ("Counts 1, 3-10"), and (2) knowingly possessing or using without lawful authority one or more means of identification of another person, 18 U.S.C. § 1028(a)(7) ("Count 2"). See R1 at 21. Delpeche pleaded guilty to all counts without the benefit of a plea agreement. See R2 at 6, 35-36.

At his guilty-plea hearing, Delpeche admitted the facts contained in the government's factual basis. See id. at 27. The government articulated the factual basis for Delpeche's plea as follows: On or about 4 June 2008, deputies of the Palm Beach County Sheriff's Department stopped Delpeche during a traffic stop. Id. at 22. After discovering that Delpeche was driving on a suspended driver's license, the officers placed Delpeche under arrest and searched his car. Id. at 23.

2

The officers found the following items in Delpeche's car: a computer, a printer, paper used to print checks, checks embossed with the names of different companies, two driver's licenses that bore Delpeche's picture but had other people's names and identities on them, and checks made out to Delpeche's co-defendants.  Id. at 23-24.  Following this discovery, the officers notified the United States Secret Service.  Id. at 23.

After the Secret Service agents informed Delpeche of his Miranda[1] rights, Delpeche admitted that his computer contained check-producing software and that he was in the business of producing checks.  Id. at 24.  Delpeche told agents that he would print checks based on the information that one of his co-defendants, later identified as Lance Ramsey, would give him.  Id. at 24-25.  Delpeche stated that Ramsey would negotiate the checks and share the proceeds with him.  Id. at 24.  However, when Ramsey was interviewed, he told agents that he was "merely a check casher, somebody who negotiated checks" and that Delpeche "was actually the one that produced the checks and got the information so the checks could be produced."  Id. at 25.  The government noted that Ramsey's statement was supported by the fact that officers found a bag in Delpeche's car containing various pieces of paper with the names of private citizens and their social security

---

[1]  Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

numbers, driver's license numbers, credit reports, and other financial information. Id.

Ramsey also provided information that led agents to Sharhonda Denson, a co-defendant, who recruited check cashers for the scheme. R3 at 65; R2 at 26. Denson would retrieve the checks from Delpeche herself or bring the check cashers to Delpeche. R2 at 26. She would then take the cashers to various locations to negotiate the checks. Id. Once the checks had been negotiated, Denson would take part of the proceeds and return the rest of the proceeds to Delpeche. Id.

According to the presentence investigation report ("PSI"), Delpeche's final adjusted offense level was 16, which included a three-level increase pursuant to U.S.S.G. § 3B1.1(b) for being a manager or supervisor in criminal activity involving five or more participants or that was otherwise extensive. See R3 at 61. This, along with Delpeche's criminal history category of VI, yielded a guidelines range of forty-six to fifty-seven months of imprisonment. See id.

At the sentencing hearing, Delpeche objected to the PSI's three-level managerial role enhancement under § 3B1.1(b). Id. at 5. In response, Special Agent Matthew Copeland of the Secret Service testified on behalf of the government. See id. at 7. On direct examination, Copeland testified that Ramsey admitted to traveling with Denson to meet Delpeche, at which time Delpeche

4

would give him a check. See id. at 14. Ramsey would then go to the West Palm Beach Circle K with Denson and cash the check. See id. Ramsey would split the proceeds with Denson who would return the money to Delpeche. See id. at 15.

Co-defendant Juree Jackson told Copeland that Denson would accompany her to meet Delpeche, Delpeche would give her a check, she and Denson would travel to the Circle K to collect the money, and she would hand the money over to Denson. See id. at 16. Denson would then give a portion of the money to Delpeche. Id. Co-defendant Cassandra Laster told Copeland that she and Denson would meet with Delpeche to pick up the checks, then they would travel together to the Circle K and other locations to cash the checks, and that she would give Denson half of the proceeds. See id. at 17. Denson would give the proceeds back to Delpeche. See id. at 17-18.

Copeland also testified that Denson stated that she and Delpeche would split the proceeds 50/50 and that she thought Delpeche received account information from his sister. See id. at 18. Additionally, she stated that Delpeche "directed her . . . where to cash the checks, locations that might be successful for them to cash checks, specifically . . . the Circle K location in West Palm Beach." Id. However, on cross-examination, Copeland testified that neither Ramsey, Denson, Jackson, nor Laster told him that Delpeche was the individual who determined the victims

5

or the amount on the fictitious checks. See id. at 30-31.

Based on Copeland's testimony, the government argued that Delpeche was the only person producing checks and sending them to the cashers. See id. at 43. It argued that Delpeche was the one putting the pertinent information on the checks, including corporate names and amounts. See id. The government further argued that since Delpeche directed the cashers to the check cashing locations and received a portion of the check cashers' proceeds, a managerial role enhancement was warranted. See id. at 45. In contrast, Delpeche argued that there was no evidence showing that he determined who the victims were or the amounts on the checks, and thus, there was no evidence that he had a managerial role. See id. at 46-47.

The district court overruled Delpeche's objection to the managerial role enhancement. See id. at 50. The district judge noted that if Delpeche had only made checks he would not be a manager, but explained:

> I . . . find that there is significant and substantial evidence that Mr. Delpeche's role was far greater than that.
>
> There is credible testimony before The Court that Mr. Delpeche indicated the stor[e], at least one stor[e] where the checks were to be cashed.
>
> There is significant evidence indicating that Mr. Delpeche in fact was the person who determined who would be the check casher and the amount and so on.

6

Now, he may have acted through an intermediary, that is Ms. Denson may have been the person who went out and did the recruiting, but there is also testimony that Mr. Delpeche received moneys once the check had been negotiated.

So if a manager is somebody who is directing and is in charge of and not just a supplier of the check, but somebody who really is managing the whole enterprise or playing a role, then certainly the Government has established that by a preponderance of the evidence.

Id. at 49-50.

After discussing the 18 U.S.C. § 3553(a) factors, the district court sentenced Delpeche to a total of sixty-six-months of imprisonment and three years of supervised release. See id. at 73-79, 81. The district court also ordered Delpeche to pay $5,373.82 in restitution. See id. at 79. Delpeche renewed his objection to his managerial role enhancement. See id. at 84-85. This appeal follows.

## II. DISCUSSION

"We review the district court's factual findings for clear error and [its] application of the sentencing guidelines to the facts de novo." United States v. McGuinness, 451 F.3d 1302, 1304 (11th Cir. 2006) (per curiam) (citation omitted).

Pursuant to U.S.S.G. § 3B1.1(b), a district court may increase a defendant's role in the offense by three levels if the defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). "To qualify for an

adjustment under this section, the defendant must have been the . . . manager[] or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. (n.2). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). The defendant need only exert "some degree of control, influence, or leadership" to be considered a manager or supervisor under § 3B1.1(b). United States v. Yates, 990 F.2d 1179, 1182 (11th Cir. 1993) (per curiam). In United States v. Matthews, we held that a defendant who "fronted or directly sold cocaine to numerous 'runners' who would then sell the drug to buyers" and give the defendant the resulting profit justified a managerial role enhancement under § 3B1.1(b). 168 F.3d 1234, 1250 (11th Cir. 1999)

Here, Delpeche does not dispute the number of participants or the otherwise extensive nature of the check cashing scheme, nor does he deny that he created the counterfeit checks. In addition to Ramsey's statement that Delpeche received the information to produce the counterfeit checks, the government also found physical evidence in Delpeche's car that established that he had access to all the necessary financial information that would allow him to decide which names and what amounts to put on the counterfeit checks.

The evidence also shows that Delpeche directed at least one other individual,

Denson. Delpeche told her to cash the checks at the West Palm Beach Circle K because the cashers would be able to successfully cash the counterfeit checks at that location. The evidence also shows that Ramsey, Jackson, and Laster successfully cashed counterfeit checks at that Circle K location.

Furthermore, similar to the defendant in <u>Matthews</u>, Delpeche would front counterfeit checks to his co-defendants, who, in turn, would share the proceeds with him after cashing out. <u>See</u> <u>id</u> at 1250. Thus, the district court properly issued Delpeche a three-level role enhancement for being a manager or supervisor of a check cashing scheme when Delpeche created the counterfeit checks, obtained the information to put on the counterfeit checks, directed at least one individual in the scheme, and received a portion of the proceeds after the counterfeit checks were negotiated.

### III. CONCLUSION

Based on the evidence in the record, the district court did not err by finding that Delpeche's role in the check cashing scheme warranted a three-level enhancement under § 3B1.1(b). Accordingly, we AFFIRM.

**AFFIRMED.**